Richard J. KOESTLER, Jr., Plaintiff-Appellant,

v.

Donald E. POLLARD, Defendant-Respondent.

Supreme Court

*No. 90–1004. Argued March 27, 1991.—Decided June 19, 1991.*

(Also reported in 471 N.W.2d 7.)

For the plaintiff-appellant there were briefs (in the court of appeals) by *James W. Hammes, Timothy J.*

*Andringa* and *Cramer, Multhauf & Hammes,* Waukesha and oral argument by *James W. Hammes.*

For the defendant-respondent there was a brief (in the court of appeals) by *Bruce M. Peckerman,* Milwaukee and oral argument by *Bruce M. Peckerman.*

LOUIS J. CECI, J. This case is before the court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats. The plaintiff, Richard J. Koestler, Jr. (Koestler), commenced this action against Donald E. Pollard (Pollard), seeking damages for the intentional infliction of emotional distress. Koestler alleged that Pollard intentionally concealed from him the fact that Pollard was the biological father of a child born to Koestler's wife during their marriage and revealed said fact after Koestler developed a bond with the child.

Koestler appeals from the decision and order of the circuit court for Waukesha county, Willis J. Zick, Circuit Judge, dismissing the action. In granting the motion to dismiss, the circuit court reasoned that the legislature intended to abolish claims such as Koestler's when it abolished actions for criminal conversation and alienation of affection.[1]

One issue is presented by this review—whether a complaint alleging the following states a claim for relief: (1) the defendant intentionally concealed from the plaintiff the fact that the defendant is the biological father of

---

[1] Section 768.01, Stats., provides:

**768.01 Actions for breach of promise, alienation of affection and criminal conversation abolished.** All causes of action for breach of contract to marry, alienation of affections and criminal conversation are hereby abolished, except that this section shall not apply to contracts now existing or to causes of action which heretofore accrued.

a child born to the plaintiff's wife during their marriage, and (2) the defendant revealed the child's paternity after the plaintiff developed a bond with the child. We hold that a complaint which alleges the facts necessary to state a claim for criminal conversation does not state a claim for relief even if it alleges additional facts which need not be alleged to state a claim for criminal conversation. Accordingly, we conclude that Koestler's complaint fails to state a claim upon which relief may be granted.

The facts relevant to this appeal are not in dispute. On June 14, 1989, Koestler commenced this action. Koestler alleged, *inter alia,* that while he was married to Vickie Lynn Koestler, Pollard engaged in sexual intercourse with Vickie which resulted in the birth of a child, C.K., in 1983. Koestler further alleged that Pollard knew he was the biological father of C.K. but intentionally caused this information to be kept from Koestler until June 17, 1987. As a result of the initial concealment and eventual disclosure of the paternity of C.K., Koestler alleged that he suffered an extreme and disabling emotional response which disturbed his relationship with C.K. and with his other child.

On August 23, 1989, Pollard moved the court to dismiss Koestler's complaint for failure to state a claim upon which relief may be granted. Pollard argued that public policy bars Koestler's claim.

The circuit court heard Pollard's motion to dismiss on March 9, 1990. By order entered March 27, 1990, the circuit court granted Pollard's motion to dismiss. In granting the motion, the circuit court reasoned that the legislature intended to abolish Koestler's claim when it abolished claims for criminal conversation and alienation of affection.

Koestler appealed from the decision of the circuit court, and the court of appeals certified the appeal to this court.

Whether a complaint states a claim upon which relief may be granted is a question of law which we decide independently and without deference to the decisions of lower courts. *Blue Cross v. Fireman's Fund,* 140 Wis. 2d 544, 548, 411 N.W.2d 133 (1987). In reviewing the grant of a motion to dismiss for failure to state a claim upon which relief may be granted, we take the facts stated in the complaint as true. *Id.* at 546.

As Koestler's counsel admitted at oral argument, the facts alleged in Koestler's complaint include those facts which constitute the basis for a claim of criminal conversation. Therefore, Koestler's claim is barred by the legislature's abolition of claims for criminal conversation. Moreover, the public policy underlying the legislature's abolition of claims for criminal conversation dictates that the courts should not administer heart balm in the form of civil liability.

At common law, a spouse could bring an action for criminal conversation against a third party who engaged in adultery with the spouse's marriage partner. The plaintiff in an action for criminal conversation had to prove the following facts:

(1) an actual marriage between the spouses, and

(2) sexual intercourse between the defendant and the guilty spouse during coverture [marriage].

*Schneider v. Mistele,* 39 Wis. 2d 137, 140, 158 N.W.2d 383 (1968). Koestler's complaint alleges the following facts:

802

(1) an actual marriage between Koestler and Vickie Lynn Koestler;

(2) sexual intercourse between Pollard and Vickie Lynn Koestler during the Koestlers' marriage;

(3) the birth of a child, C.K., during the marriage as a result of the aforementioned sexual intercourse; and

(4) the initial concealment and eventual disclosure of the fact that Pollard is the biological father of C.K.[2]

The first two facts contained in Koestler's complaint are identical to the facts necessary to plead and prove a claim for criminal conversation. Moreover, the third fact contained in Koestler's complaint, the birth of a child, is a natural and probable consequence of the second fact contained in Koestler's complaint, sexual intercourse. Finally, the fourth fact contained in Koestler's complaint, concealment and eventual disclosure of the paternity of the child born as a result of the adulterous intercourse, is undoubtedly a common occurrence in cases of criminal conversation which result in pregnancy.

While the third and fourth facts contained in Koestler's complaint are not essential to a claim for criminal conversation, they all flow directly from the facts constituting criminal conversation which are alleged in Koestler's complaint. Therefore, Koestler's complaint in essence states a claim for criminal conversation and is barred by sec. 768.01, Stats.[3] To hold oth-

---

[2]Koestler's complaint also includes allegations which go to the issue of damages.

[3]The analysis of Koestler's complaint and the facts necessary to state a claim for criminal conversation set forth above illus-

erwise would violate the legislature's directive that ch. 768, Stats., should be liberally construed[4] and would subvert the policies underlying sec. 768.01. Furthermore, Koestler's claim violates public policy because claims such as his embroil the courts in disputes in which judicial intervention is inappropriate.

When it enacted ch. 768, the legislature provided in sec. 768.08 that "[t]his chapter shall be liberally construed to effectuate the object thereof." The court of appeals decision in *Prill v. Hampton,* 154 Wis. 2d 667, 453 N.W.2d 909 (Ct. App. 1990), illustrates just how liberally the provisions of ch. 768 should be construed. In *Prill,* one of the plaintiffs argued that she should be

---

trate that, contrary to Koestler's assertions, his complaint is an attempt to "end-run" sec. 768.01 which arises from marital misconduct. Without the alleged marital misconduct, Koestler's wife could not have given birth to a child of whom Koestler was not the biological father, and Pollard would not have had anything to conceal.

[4]The authorities cited by Koestler do not support his conclusion that sec. 768.01 should be strictly construed. *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983), involved the public policy exception to the employment at will doctrine and, therefore, does not apply to the case at bar. Contrary to Koestler's assertions, *Brown v. Thomas,* 127 Wis. 2d 318, 379 N.W.2d 868 (Ct. App. 1985), does not compel this court to strictly construe sec. 768.01 for two reasons. First, the *Brown* court overlooked sec. 768.08's provision that ch. 768 should be liberally construed. Second, *Brown* predates *Prill v. Hampton,* 154 Wis. 2d 667, 453 N.W.2d 909 (Ct. App. 1990), which suggests that a liberal construction of sec. 768.01 is appropriate for the reasons set forth below. Furthermore, the doctrine of *inclusio unius est exclusio alterius* does not apply to the case at bar because we are not creating an exception to sec. 768.01. Rather, pursuant to sec. 768.08, we are liberally construing sec. 768.01 to effectuate the policies underlying same.

804

permitted to prove that her husband's injuries caused their divorce. *Id.* at 681.

The court of appeals rejected the wife's contention that she had a claim for "wrongful divorce" because it was "essentially an alienation of affections claim." *Id.*[5] The court of appeals reached this conclusion despite the fact that the wife's claim was based on the *negligent* conduct of the defendant, and alienation of affection claims, when they were allowed, were based on the defendant's *intentional* interference in the marital relationship.[6] If sec. 768.01 bars a negligence claim even though it expressly abolishes only intentional torts, it should be liberally construed to bar claims which allege that a criminal conversation produced a child whose paternity was intentionally kept from the innocent spouse, since it expressly abolishes criminal conversation actions.

Furthermore, if Koestler can evade the provisions of sec. 768.01 simply by pleading facts which naturally flow from the facts that constitute criminal conversation, sec. 768.01 will be destroyed by artful pleading. No just or

---

[5]The court of appeals also rejected the wife's claim for wrongful divorce on public policy grounds, to wit, the difficulty in determining what causes a marriage to fail, as well as the fact that such an inquiry would open to scrutiny very personal issues. *Id.* However, the *Prill* court noted that the two reasons (public policy and sec. 768.01) for its decision were interrelated when it stated that "[t]he same public policy reasons supporting the legislature's abolition of these claims [alienation of affections] also support denial of [the wife's] claim for wrongful divorce." *Id.* at 681–82. Thus, *Prill* recognizes that the policy behind sec. 768.01 is broader than the precise terms of sec. 768.01 and that public policy may bar claims that do not fall precisely within the categories of actions abolished by the statute.

[6]W. Prosser & W. Keeton, *The Law of Torts,* sec. 124 at 919 n.42, 920 (5th ed. 1984).

sensible distinction could be drawn between complaints that allege criminal conversation and, therefore, are barred by sec. 768.01 and complaints that allege the facts of criminal conversation and enough additional facts to evade sec. 768.01's prohibition. For example, if we hold that sec. 768.01 does not bar Koestler's complaint, a plaintiff could state a claim for intentional infliction of emotional distress by alleging that an extramarital affair was carried on in a public manner with the intent of inflicting emotional distress upon him or her. Such a claim is clearly the type of claim the legislature intended to abolish by enacting sec. 768.01 and by providing that it should be liberally construed.

Moreover, the policy underlying sec. 768.01 would be subverted if a plaintiff could state a claim for relief simply by alleging facts in addition to the elements of criminal conversation. As one court noted when rejecting claims for the intentional infliction of emotional distress arising out of adulterous conduct:

> Assuming that [the] law now permits 'recovery for the intentional infliction of mental distress without proof of the breach of any duty other than the duty to refrain from inflicting it' . . ., strong public policy considerations militate against judicially applying these recent developments in this area of the law to the factual context of a dispute arising out of matrimonial differences. To sustain the claim for damages would result in a revival of evils not unlike those which prompted the Legislature in 1935 to outlaw actions for alienation of affections and criminal conversation . . ..

*Weicker v. Weicker,* 22 N.Y.2d 8, 11, 237 N.E.2d 876, 876–77, 290 N.Y.S.2d 732, 733–34 (1968) (citations omitted).

The evils that legislatures and courts intended to eliminate by outlawing claims of criminal conversation included the harm that claims for criminal conversation:

> afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement.

W. Prosser & W. Keeton, *The Law of Torts,* sec. 124 at 929 (5th ed. 1984) [hereinafter *The Law of Torts*]. The evil of using the threat of publicity to extort settlements is not diminished simply because the plaintiff is seeking recovery under the label of emotional distress instead of the label of criminal conversation when, as in the case at bar, the facts alleged in a complaint for the former are nearly identical to the facts that would be alleged in a complaint for the latter.

Another evil which prompted legislatures and courts to abolish claims for alienation of affection and criminal conversation was that "even genuine actions of this type [alienation of affection and criminal conversation] [were] brought more frequently than not with purely mercenary or vindictive motives . . .." *The Law of Torts,* sec. 124 at 929. The risk of this evil is even greater in cases such as the one at bar when a child is born as a result of the criminal conversation.[7]

---

[7]The motivations for abolishing actions for criminal conversation set forth in *The Law of Torts* illustrate that, contrary to Koestler's assertion, the legislative history surrounding statutes such as sec. 768.01 suggests that intentional infliction of emotional distress actions which emulate actions for criminal conversation should be barred. Otherwise, as discussed above, all the evils which the legislature intended to eliminate will return.

■ Furthermore, the type of injury for which Koestler seeks to recover is not the type of injury for which the law can, or should, provide a remedy. Therefore, public policy bars Koestler's claim. In *Richard P. v. Superior Court,* 202 Cal. App. 3d 1089, 249 Cal. Rptr. 246 (1988), the court dismissed on public policy grounds a complaint that alleged the same facts and stated the same claim as Koestler's complaint in the case at bar. The *Richard P.* court's analysis illustrates why claims such as Koestler's should not be allowed:

> We agree with real parties in interest [the parties who stood in Koestler's position] that they have alleged words which normally would suffice to state [a] tort [cause] of action for . . . intentional infliction of emotional distress. We feel that the subject matter of the action, however, is not one in which it is appropriate for the courts to intervene. 'Broadly speaking, the word "tort," means a civil wrong, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages. It does not lie within the power of any judicial system, however, to remedy all human wrongs. There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of the feelings of others are beyond any effective legal remedy and any practical administration of law. . . . To attempt to correct such wrongs or give relief from their effects "may do more social damage than if the law leaves them alone." ' . . .
>
> We conclude here that any wrong which has occurred as a result of Richard's [the party who stood in Pollard's position] actions is not one which can be

Moreover, our legislature expressly provided in sec. 768.08 that ch. 768 should be liberally construed.

redressed in a tort action. We do not doubt that this lawsuit emanated from an unhappy situation in which the real parties in interest suffered grief. We feel, however, that the innocent children here may suffer significant harm from having their family involved in litigation such as this and that this is exactly the type of lawsuit which, if allowed to proceed, might result in more social damage than will occur if the courts decline to intervene. 'We do not believe the law should provide a basis for such interfamilial warfare.'

*Id.* at 202 Cal. App. 3d at 1093–94, 249 Cal. Rptr. at 249 (citations omitted).

We are persuaded by the *Richard P.* court's analysis. Public policy bars Koestler's claim because more harm than good will result if Koestler is allowed to pursue this action.[8] Moreover, Koestler's claim is barred by the policies underlying sec. 768.01, if not by sec. 768.01 itself, because allowing claims such as Koestler's will result in many of the evils which occurred when claims for criminal conversation were allowed.

*By the Court.*—The decision and order of the circuit court are affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Although the facts of this case might also have formerly given rise to an alienation of affection and

---

[8]Contrary to Koestler's assertion, whether the circuit court based its decision on sec. 768.01 alone or on sec. 768.01 and public policy is irrelevant. We may affirm a lower court's decision on different grounds than those relied upon by the lower court. *See Saenz v. Murphy,* 162 Wis. 2d 54, 57 n.2, 469 N.W.2d 611 (1991). Furthermore, the question of public policy has been fully argued and briefed before this court.

criminal conversation action, I would hold that the plaintiff's claim for intentional infliction of emotional distress is not expressly barred by sec. 768.01, which eliminated alienation of affection and criminal conversation actions, and is not barred by public policy. Accordingly, I would reverse the order of the circuit court and hold that the complaint states a claim for which relief may be granted.

## I.

While sec. 768.01, Stats. 1987–88, specifically abolishes all causes of action for alienation of affections and criminal conversation, it does not expressly abolish the tort action of intentional infliction of emotional distress, an action recognized in this state when sec. 768.01 was enacted. Nor does sec. 768.01 have a catch-all clause saying torts similar to alienation of affections or criminal conversation are abolished. While sec. 768.08 provides that chapter 768 shall be liberally construed to effectuate the object thereof, it does not authorize this court to rewrite sec. 768.01 to add causes of action not enumerated therein.

When I compare the plaintiff's intentional infliction of emotional distress claim with alienation of affections and criminal conversation claims, I conclude that the plaintiff's claim in this case is so dissimilar to those claims that it is not barred by sec. 768.01.[1]

---

[1]For discussions of the three causes of action, see, e.g., Feinsinger, *Legislative Attack on "Heart Balm,"* 33 Mich. L. Rev. 979 (1935); Note, *Power Abuse as a Basis for Alienation of Affections:* Nelson v. Jacobsen, 1985 B.Y.U. L. Rev. 183 (1985); Note, *Loss of Consortium and Intentional Infliction of Emotional Distress: Alternative Theories to Alienation of Affections,* 67 Iowa L. Rev. 859 (1982); Note, Cannon v. Miller: *The Brief Death of Alienation of Affections and Criminal Conversation in North*

The gravamen of the tort action of alienation of affections was a spouse's loss of the love, society, companionship and comfort of the other spouse. The complaining party had to prove (1) wrongful conduct by the defendant; (2) loss of affection or consortium of the spouse; and (3) a causal connection between the wrongful conduct and the loss. *Dobrient v. Ciskowski,* 54 Wis. 2d 419, 422, 195 N.W.2d 449 (1972). The tort focused not on the sexual intimacy of the plaintiff's spouse with the defendant but on the defendant's interference with the marital relationship that changed the plaintiff's spouse's mental attitude toward the plaintiff.[2]

The tort action of criminal conversation, a civil tort action for adultery, focused on the marriage. The elements of a claim for criminal conversation were (1) an actual marriage between the spouses and (2) sexual intercourse during the marriage between the defendant and the plaintiff's spouse. *Schneider v. Mistele,* 39 Wis. 2d 137, 140, 158 N.W.2d 383 (1968).[3]

In contrast to these two abolished actions, intentional infliction of emotional distress is a tort action arising from interference with the person, for injury to

---

*Carolina,* 63 N.C.L. Rev. 1317 (1985); Note, *The Suit of Alienation of Affections: Can Its Existence be Justified Today?,* 56 N.D.L. Rev. 239 (1980); Note, *The Case for Retention of Causes of Action for Intentional Interference with the Marital Relationship,* 48 Notre Dame Lawyer 426 (1972); Note, Hunt v. Hunt: *The Status of the "Heartbalm" Torts in South Dakota,* 27 S.D. L. Rev. 160 (1982); Note, Nelson v. Jacobsen: *A New Causation Standard for Alienation of Affection Actions,* 1984 Utah L. Rev. 885 (1984).

[2]See also *Prosser and Keeton on Torts,* sec. 124, p. 918 (5th ed. 1981); Restatement (2d) of Torts sec. 683, p. 478 (1977).

[3]See also *Prosser and Keeton on Torts,* sec. 124, p. 917 (5th ed. 1981); Restatement (2d) of Torts sec. 685, p. 484 (1977).

the plaintiff's well-being.[4] The four elements of intentional infliction of emotional distress are: (1) the defendant's purpose was to cause the plaintiff emotional distress, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct was the cause in fact of the plaintiff's injury, and (4) the plaintiff suffered an extreme disabling emotional response. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 695, 271 N.W.2d 368 (1978); *McKissick v. Schroeder,* 70 Wis. 2d 825, 832, 235 N.W.2d 686 (1975); *Alsteen v. Gehl,* 21 Wis. 2d 349, 124 N.W.2d 312 (1963).[5]

Although a particular fact situation arising out of a marital relationship might support all three causes of action, the three causes of action are separate and distinct.

The elements of each action are different. Alienation of affections and criminal conversation actions required marriage as a predicate for the tort; both actions protected the husband-wife relationship. Intentional infliction of emotional distress neither requires nor is specifically designed to protect the marital relationship. Criminal conversation is the tort analogue to the crime of adultery; sexual conduct is an essential element of the tort. Sexual conduct is not a necessary element in an action for intentional infliction of emotional distress.

An action for alienation of affections focused on the effect of the defendant's conduct on the *plaintiff's spouse.* An action for criminal conversation focused on the defendant's sexual relationship with the *plaintiff's spouse.* An action for intentional infliction of emotional

---

[4]*Prosser and Keeton on Torts,* sec. 12, pp. 60–62 (5th ed. 1981).

[5]See also Restatement 2d of Torts, sec. 46, pp. 71–72 (1977); *Nelson v. Jacobsen,* 669 P.2d 1207 (Utah 1983).

distress focuses on the defendant's conduct towards the *plaintiff* and the effect of the defendant's conduct on the *plaintiff*.[6]

The three tort actions protect different interests and compensate different injuries. In an alienation of affections or criminal conversation action the plaintiff seeks compensation for disruption of the marital relationship. In an action for intentional infliction of emotional distress, the plaintiff seeks compensation for injury to his or her own person; the severe emotional harm to the plaintiff is an essential element of the tort. The plaintiff's claim in this case alleges that the defendant caused emotional harm to the plaintiff. The plaintiff does not allege adultery or harm to his marital relationship. An alienation of affections or criminal conversation action does not require emotional harm to the plaintiff, although the fact-finder may consider emotional harm as a factor in assessing damages.

---

[6]The analysis used in *Bartanus v. Lis*, 332 Pa. Super. 48, 480 A.2d 1178 (Pa. Super. Ct. 1984), is persuasive. That court contrasts a parent's action for alienation of a child's affection and a parent's action for intentional infliction of emotional distress. The court differentiated between the two causes of action because the elements of the torts—especially the alleged harms—were distinct.

"In an action for the intentional infliction of emotional distress, the central inquiry is whether there was intentional, outrageous conduct and whether the plaintiff suffered severe distress as a result of that conduct. The focus, then, is on the effect the conduct has on the plaintiff. Whether the conduct actually alienated the child may be irrelevant. Conversely, in an action for alienation of the affections of a child, it is not necessary that the conduct involved be outrageous and, more importantly, the focus is on the effect the prohibited conduct has on the child." *Bartanus*, 480 A.2d at 1185.

Because the plaintiff's claim for intentional infliction of emotional distress requires proof of different elements and redresses a different harm than an alienation of affections or a criminal conversation action, I conclude that the legislature did not abolish intentional infliction of emotional distress when it abolished alienation of affections and criminal conversation actions in sec. 768.01, Stats. 1989-90.[7]

## II.

I further conclude that the public policy considerations that impelled the legislature to abolish alienation of affections and criminal conversation actions do not require affirmance of the circuit court's dismissal of the complaint.

While the integrity of the marital relationship deserves legal protection, many states have abolished or restricted alienation of affections and criminal conversation claims by statute or judicial decision.[8] These states have determined that the social harm engendered by

[7]For a similar holding, see *Van Meter v. Van Meter,* 328 N.W.2d 497 (Iowa 1983).

[8]For compilations of state statutes and cases, see *Prosser and Keeton on Torts,* sec. 124, p. 929-930 (5th ed. 1981); Note, *Loss of Consortium and Intentional Infliction of Emotional Distress: Alternative Theories to Alienation of Affections,* 67 Iowa L. Rev. 859, 859, n.4 (1982); Note, *Power Abuse as a Basis for Alienation of Affections:* Nelson v. Jacobsen, 1985 B.Y.U. L. Rev. 183, 183 (1985); Note, Cannon v. Miller: *The Brief Death of Alienation of Affections and Criminal Conversation in North Carolina,* 63 N.C.L. Rev. 1317, 1326-1327 (1985); Note, *The Suit of Alienation of Affections: Can Its Existence be Justified Today?,* 56 N.D.L. Rev. 239, 247, n.75 (1980); Note, Hunt v. Hunt: *The Status of the "Heartbalm" Torts in South Dakota,* 27 S.D.L. Rev. 160, 164 (1982); Note, Nelson v. Jacobsen: *A New Causation Standard for*

these torts outweighs the goals they attempt to serve. Legislatures and commentators give several reasons for abolishing alienation of affections and criminal conversation actions.[9] These reasons do not apply with the same force to the plaintiff's claim of intentional infliction of emotional distress, even though it is predicated on facts arising out of a marital relationship that might in the past have also been the basis of an alienation of affections or criminal conversation action.

First, the abolished actions were not generally credited with having a significant deterrent effect on tortious conduct or a significant effect on protecting or preserving the marital relationship. Presumably the marriage was not harmonious before the misconduct and was not apt to be improved by the threat of a civil action. In contrast, individuals considering intentionally inflicting emotional distress on another may be deterred by the prospect of a civil tort action.

Second, the abolished actions, often involving an accusation of sexual misconduct, had a great potential for abuse. The abolished actions allowed society's intrusion into the emotional, marital, and sexual aspects of individuals' lives and may have unreasonably interfered with an individual's interest in personal privacy. The abolished actions could have been used for blackmail. The threat of reputation-damaging publicity could force

---

*Alienation of Affection Actions,* 1984 Utah L. Rev. 885, 891–92, nn.50, 51 (1984).

[9]For evaluations of the reasons for abolishing alienation of affections and criminal conversation actions, see *Fundermann v. Mickelson,* 304 N.W.2d 790 (Iowa 1981); *Wyman v. Wallace,* 94 Wash. 2d 99, 615 P.2d 452 (1980); *Prosser and Keeton on Torts,* sec. 124, p. 929–30 (5th ed. 1981) and commentary cited in notes 2 and 9 above.

a spouse to accept an unfavorable divorce settlement or to force the third party to pay money.

While actions for intentional infliction of emotional distress predicated on facts arising out of a marital relationship also raise the possibility of blackmail suits and intrusion into privacy, they do not carry the same potential for abuse as did the two abolished actions.[10] One reason is that intentional infliction of emotional distress is harder to prove than the two abolished actions. In an action for alienation of affections the plaintiff was assisted by both the law's presumption of affection between the spouses and the presumption that if no affection existed between the spouses reconciliation might have been possible had the defendant not interfered. These presumptions eased the plaintiff's burden of proof and left the defendant with a difficult burden.[11] In a criminal conversation action, the plaintiff had to prove only two elements and could establish adulterous conduct through circumstantial evidence. In contrast, a plaintiff who alleges intentional infliction of emotional distress must establish that the defendant intended to cause the plaintiff emotional distress, that the defendant's conduct was extreme and outrageous, and that the plaintiff's resulting emotional distress was severe. The two abolished actions required none of these elements. The elements of the tort of intentional infliction of emo-

---

[10]See *Brown v. Thomas,* 127 Wis. 2d 318, 379 N.W.2d 868 (Ct. App. 1985), holding that chapter 768 abolishing actions for breach of contract to marry did not bar a claim for the return of an engagement ring. Abolishing a claim for return of an engagement ring did not further the purpose of chapter 768 to prevent extortionary conduct.

[11]Note, *The Suit of Alienation of Affections: Can Its Existence be Justified Today?,* 56 N.D.L. Rev. 239, 244 (1980).

tional distress and the difficulty of proof provide built-in safeguards to prevent its abuse.

Third, judgments in alienation of affections and criminal conversation actions compensate intangible injuries and may be excessive and arbitrary. Juries may have awarded damages in the two abolished actions to punish the defendant's misconduct rather than for the harm inflicted.

In intentional infliction of emotional distress, the measure of damage is serious emotional harm. All compensable personal injuries, including physical harm, pain and suffering, and emotional distress, carry the risk of excessive and arbitrary awards. Compensation for serious emotional distress is, however, the only basis for damages in an intentional infliction of emotional distress action.[12] Proof of the severity of the emotional distress affords evidence of the genuineness of the distress.

Through the tort of intentional infliction of emotional distress society recognizes that emotional distress is as significant as physical injury. Our court has recognized the fact-finder's ability to assess damages in intentional infliction of emotional distress actions. See *Alsteen v. Gehl,* 21 Wis. 2d 349, 359, 124 N.W.2d 312 (1963).

Fourth, the difficulty of determining liability made the alienation of affections tort inequitable. In alienation of affections actions the plaintiff had to prove that the defendant was the controlling cause of the loss of affections. The tort concept of causation is too simplistic when the interest protected is the marital relationship. Marriages vulnerable to a third party's interference are

[12]Compare the descriptions of the harms for the three torts. Restatement (2d) of Torts, sec. 46, p. 78, sec. 683, p. 482, sec. 685, p. 485 (1977).

often troubled ones for a number of reasons. Assigning blame and causation for interference with the complex relationship of marriage is extraordinarily difficult, if not impossible. To mask the difficulties of proving causation a plaintiff may manipulate the sympathies, prejudices and passions of a jury by stressing the defendant's misconduct.

The tort concept of causation is more applicable in intentional infliction of emotional distress actions because the fact-finder need not examine the complex causes of the dissolution of a marriage.

Fifth and finally, alienation of affections and criminal conversation actions rest on the outmoded view that the husband and wife are one under the law and that each has a property interest in the other's person. Alienation of affections actions derive from the master-servant action of enticement; the law treated the wife as the husband's property, and the action sought to protect the husband's interest in his wife's services. Criminal conversation, the tort version of criminal adultery, protected the husband's interest in exclusive sexual intercourse with his wife; the husband could recover damages even when the wife consented to or initiated intercourse with another man. With the adoption of the Married Women's Property Act in Wisconsin in the 19th century, the courts extended the proprietary concept of these two causes of action to wives. Unlike the two abolished actions, intentional infliction of emotional distress is not based on dated property law concepts of marriage.

Individuals may intentionally inflict emotional distress in circumstances other than the marital relationship. The plaintiff's complaint in this case does not allege an interference with the marital relationship. The defendant's conduct thus constitutes a tort separate and independent from the torts of alienation of affections

and criminal conversation. Intentionally inflicted emotional distress is no less emotional distress and no less an actionable tort because the emotional distress was intentionally inflicted in a fact situation which may have, in another era, given rise to a claim for alienation of affections or criminal conversation.

I conclude, as several courts have concluded in similar cases, that the legislature did not intend to abolish a claim for the separate tort of intentional infliction of emotional distress when it abolished the causes of action described in sec. 768.01, because intentional infliction of emotional distress does not implicate the same public policies.[13] I therefore conclude that the plaintiff should be afforded the opportunity to attempt to prove his cause of action.

---

[13]For several cases in other jurisdictions reaching the same result as I reach, see, *e.g., Van Meter v. Van Meter,* 328 N.W.2d 497, 498 (Iowa, 1983) ("the elements of the tort of intentional infliction of emotional distress, and some of its policy considerations, are different from those in an alienation claim"); *Bartanus v. Lis,* 332 Pa. Super. 48, 480 A.2d 1178 (Pa. Super. Ct. 1984) (no cause of action recognized for alienation of child's affection but cause of action for intentional infliction of emotional distress recognized); *Raftery v. Scott,* 756 F.2d 335 (4th Cir. 1985) (no cause of action recognized for alienation of child's affection; independent tort of intentional infliction of emotional distress recognized even if facts may have overtones of affection alienation); *O'Neil v. Schuckardt,* 112 Idaho 472, 733 P.2d 693 (1986) (alienation of affections abolished; independent cause of action for invasion of privacy permitted); *Prosser and Keeton on Torts,* sec. 124, p. 930 (5th ed. 1981).

For a case supporting the result the majority opinion reaches, see *Richard P. v. Superior Court (Gerald B.),* 202 Cal. App. 3d 1089, 249 Cal. Rptr. 246 (1988).

For the reasons set forth, I dissent. I would reverse the order of the circuit court and remand the cause to the circuit court.

I am authorized to state that Chief Justice Nathan S. Heffernan joins this dissent.