# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

<table>
<tr><td>

**WESLEY CARY**,

   Plaintiff/Appellant.

VS.

**ROBERT BOURNE, M.D., et al**,

   Defendants/Appellees.

</td><td>

)
)
)
)
)
)
)
)
)
)

</td><td>

Benton County Circuit Court
No. 3674

C.A. No. 02A01-9511-CV-00263

</td></tr>
</table>

**FILED**

**September 23, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Benton County at Camden.
**Honorable Julian P. Guinn, Judge**

**Robert G. Gilder**, Southaven, Mississippi
**L. Anne Jackson**, Southaven, Mississippi
Attorneys for Plaintiff/Appellant.


**Marty R. Phillips**, RAINEY, KIZER, BUTLER, REVIERE & BELL, P.L.C., Jackson, TN
Attorney for Defendants/Appellees Robert Bourne, M.D. and Agustin Vitualla, M.D.
**Michael E. Evans**, EVANS & TODD, Nashville, Tennessee
Attorney for Defendant/Appellee Medco Drugs, Inc.
**Floyd S. Flippin**, ADAMS, RYAL & FLIPPIN, Humboldt, Tennessee
Attorney for Defendant/Appellee David Berger, M.D.
**C. J. Gideon, Jr.,**
**John T. Reese,**
GIDEON & WISEMAN, Nashville, Tennessee
Attorneys for Defendant/Appellee Jon Winter, D.O.
**Rebecca Adelman**, GLASSMAN, JETER, EDWARDS & WADE, P.C., Memphis, Tennessee
Attorney for Defendant/Appellee Robert L. Horton, Jr., D.D.S.
**David A. Lufkin**, LUFKIN & HENLEY, Knoxville, Tennessee
Attorney for Defendant/Appellee Rite Aid of Tennessee, Inc.
**Catherine B. Clayton**, Jackson, Tennessee
Attorney for Defendant/Appellee Wal-Mart Stores, Inc.
**John S. Little**, Jackson, Tennessee
Attorney for Defendant/Appellee Fry Drug Company, Inc.
**Lela M. Hollabaugh**, MANIER, HEROD, HOLLABAUGH & SMITH, Nashville, Tennessee
Attorney for Defendants/Appellees Paul Melton d/b/a Melton's Pharmacy and Fred's Stores of
Tennessee, Inc. d/b/a Fred's
**Tom Corts**, ORTALE, KELLEY, HERBERT & CRAWFORD, Nashville, Tennessee
Attorney for Defendant/Appellee Herndon Drugs

OPINION FILED:
**AFFIRMED AND REMANDED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

This is an appeal from the trial court's orders dismissing Wesley Cary's complaint against various health care providers for their alleged contribution to the breakup of his marriage to Linda K. Cary. Wesley Cary (hereinafter, "Cary" or "Mr. Cary") alleged that the marriage had been irreconcilably broken due to his wife's prescription drug addiction, which he alleged was a result of the over prescription of drugs and overfilling of prescriptions by the defendants. We affirm the trial court's decision.

**FACTS**

Wesley Cary and Linda Cary (hereinafter, "Ms. Cary"), were married in 1968, and resided in Camden, Benton County, Tennessee, throughout their marriage. On May 24, 1994, the parties separated. Prior to their separation, it is undisputed that the parties had been estranged. As early as November, 1991, Cary had told Robert Bourne, M.D. that he and Ms. Cary had been having marital difficulties. The Carys' problems exacerbated over the years to the point that they took separate vacations and had separate bank accounts. Ms. Cary filed for divorce in the Chancery Court of Benton County in September, 1994. In his answer and counter-complaint for divorce, Mr. Cary stated that Ms. Cary "became addicted to various prescription drugs and prescription medications for a long period of time prior to the final separation of the parties" and that she had denied him conjugal rights "for a long period of time prior to the separation." While the termination of the marriage is not the subject of the instant proceeding, it is relevant to the issues raised in this cause.

On May 26, 1994, Cary learned from Robert Borne, M.D., that Linda Cary had forged prescriptions to obtain medications to which she had become addicted. Cary stated in an affidavit filed in the trial court that he had no knowledge of his wife's addiction prior to May 26, 1994, and could not have known of it until that time. Cary further stated that until May 26, 1994, he had "absolutely no idea that the drastic change in my wife's behavior and attitude had anything to do with drugs." After his meeting with Dr. Bourne, Cary began an investigation into his wife's prescription drug addiction. The results of the investigation revealed that Ms. Cary had obtained many prescriptions from a number of physicians and dentists and had them filled at several pharmacies.

On May 3, 1995, Cary filed a complaint for medical malpractice in the Circuit Court of Benton County. In the complaint, Cary named as defendants: Robert Bourne, M.D., David Berger, M.D., Jon Winter, D.O., Agustin Vitualla, M.D., Robert L. Horton, Jr., D.D.S., Robert Walker, D.D.S., Rite-Aid Pharmacy #1402, Wal-Mart Pharmacy, Medco Drugs, Inc., Fry Drug Company, Paul Melton d/b/a Melton's Pharmacy, Herndon Drug Company, Pharmaceutical Services, D and K, Inc., and City Drug Company.[1] No summons were filed with the original complaint. In the complaint, Cary asserted that his marriage had been "irreconcilably broken as a direct and proximate result of his spouse, Linda Kay Cary's prescription drug addiction." Cary's cause of action arises solely from the alleged termination of his marriage; however, at no time has Linda K. Cary been a party to the instant proceeding.

On May 30, 1995, Cary filed an amended complaint but did not allege any additional causes of action. Cary attached to the amended complaint summons as to all Defendants. Also on May 30, 1995, the circuit court clerk issued said summons to all defendants except Rite-Aid Pharmacy. The summons as to Rite-Aid Pharmacy was issued subsequently on July 19, 1995.

The trial court granted summary judgment in favor of the remaining Defendants and Plaintiff appeals.[2] Review of the trial court's decision on a motion for summary judgment is *de novo*. No presumption or correctness attaches to the trial court's disposition. The Court must review the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1993). Courts should grant summary judgment only when both the facts and the conclusions to be drawn from them permit a reasonable person to reach but one conclusion. *Byrd*, 847 S.W.2d 208.

## ISSUES

On appeal, the parties have raised the following issues:

---

[1] The trial court entered orders of voluntary non-suit as to defendants City Drug Company, D & K, Inc., Pharmaceutical Services, Inc., and Robert Walker.

[2] Medco filed a motion for judgment on the pleadings. Pursuant to Rule 12.03 T.R.C.P., "[i]f, on motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."

I. Does Tennessee recognize a cause of action for termination of a marriage?

II. Whether the trial court correctly granted summary judgment on the basis that Plaintiff's cause of action for loss of consortium resulting from his wife's addiction to prescription drugs was time barred by the one-year statute of limitations codified at T.C.A. § 29-20-116.

III. Whether the statute of limitations begins to run upon discovery of the addiction or upon discovery of the cause of action.

Appellee Rite-Aid of Tennessee, Inc., has raised the following issues:

IV. Whether Rite-Aid of Tennessee, Inc., was ever named as a defendant in either the original or any amended complaint.

V. Whether Plaintiff commenced the action against Rite-Aid of Tennessee, Inc., within the one year statute of limitations period after Plaintiff admits that he had full knowledge of his claims against all defendants.

Appellees Bourne and Vitualla have raised the following issue:

VI. Did the trial court correctly grant summary judgment as to Drs. Bourne and Vitualla because the undisputed expert testimony shows that Drs. Bourne and Vitualla met the recognized standard of acceptable professional practice required of them and did not cause any injury to Plaintiff?

Appellee Robert L. Horton, D.D.S. has raised the following issue:

VII. Whether Plaintiff's appeal is frivolous and warrants imposition of an award of damages.

## STANDARD OF CARE

We will address first the issue as presented by Doctors and Vitualla. They assert that the trial court was correct in its holding because the undisputed expert evidence established that they had met the recognized standard of acceptable professional practice required of them.

In medical malpractice actions, there is no presumption of negligence on the part of the defendant. T.C.A. § 29-26-115(c) (1980) provides in relevant part:

> In a malpractice action as described in subsection (a) of this section there shall be no presumption of negligence on the part of the defendant.

T.C.A. § 29-26-115(a) sets forth the burden of proof which the plaintiff must establish to maintain a medical malpractice claim. That section states:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided in subsection (b):
>    (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
>    (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>    (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

As provided by T.C.A. § 29-26-115(d), the burden of proof in a medical malpractice action rests with the plaintiff.

This Court has held that negligence and causation in medical malpractice actions must be proved by competent expert medical testimony. *Stokes v. Leung*, 651 S.W.2d 704, 706 (Tenn. App. 1982). In fact, T.C.A. § 29-26-115(b) states:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred.

In support of their motions for summary judgment, both Dr. Bourne and Dr. Vitualla

testified by affidavit that they fully complied with the recognized standard of acceptable professional practice required of them in all of their care and treatment of Ms. Cary. In addition, Dr. Bourne and Dr. Vitualla each stated in their affidavits that they did not cause or contribute to any injury to either Mr. Cary or Ms. Cary. A defendant physician may rely upon his affidavit in support of a motion for summary judgment. *Smith v. Graves*, 672 S.W.2d 787, 790 (Tenn. App. 1984). In *Bowman v. Henard*, 547 S.W.2d 527 (Tenn. 1977), our supreme court held:

> In summary we hold that, in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise.

*Bowman*, 547 S.W.2d at 531. In the instant case, Cary presented no evidence to rebut the motion for summary judgment filed by Drs. Bourne and Vitualla. The Tennessee Supreme Court in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), held that summary judgment is appropriate in the following circumstance:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. . . . In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment . . . shall be entered against him." Rule 56.05.

*Byrd*, 847 S.W.2d at 211 (emphasis in original).

Cary failed to present any competent expert testimony whatsoever to controvert Dr. Bourne's and Dr. Vitualla's testimony concerning the recognized standard of professional practice and causation required by T.C.A. § 29-26-115(a). Therefore, we find that the trial court properly granted summary judgment in favor of Dr. Bourne and Dr. Vitualla, and we affirm the trial court's decision in this regard.

**STATUTE OF LIMITATIONS**

Since the alleged negligence underlying this cause of action is for medical malpractice, the applicable statute of limitations is one year. T.C.A. § 29-26-116(a)(1) provides: "The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104." Cary filed a complaint in this cause on May 3, 1995; however, such action, by itself, is insufficient to commence a cause of action under Rule 3, Tenn. R. Civ. P. The rule previously provided that "[a]ll civil actions are commenced by filing a complaint with the Court." In *Hine v. Commercial Carriers, Inc.*, 802 S.W.2d 218 (Tenn. 1990), a complaint was filed on March 15, 1989, within the period prescribed by the statute of limitations. However, a summons was not issued until more than two months after the statute had expired. In reversing the trial court's dismissal, the supreme court noted that Rule 4.01 T.R.C.P. provided that "upon the filing of the complaint the clerk of the court wherein the complaint is filed shall forthwith issue the required summons . . . ." The court went on to state that:

> First, Rule 3 clearly states that "[a]n action is commenced within the meaning of any statute of limitations upon such *filing of a complaint*, whether process be returned served or unserved." (emphasis added). If the drafters of the rule intended a complaint *and* summons to commence an action for statute of limitation purposes, the rule could have easily been drafted to so indicate. As it is, however, Rule 3 speaks in terms of a complaint and the statute of limitations, regardless of process. It adds no other requirement for commencing an action. Rule 4.01, dealing with the issuance of a summons, says nothing about the statute of limitations. It should be noted, however, that the language in Rule 3 indicative of time constraints speaks to keeping process in an active mode, but is not instructive on when a summons must be issued relative to the filing of the complaint.

*Hine*, 802 S.W.2d at 219-20. The court held that a summons need not necessarily be issued simultaneously with the filing of a complaint in order for the complaint to toll the statute of limitations. Rather, the summons must be issued "forthwith," which the court construed to mean within a reasonable time after the complaint is filed. The case was remanded to the trial court for a determination of whether or not the complaint was issued within a reasonable time. However, Rule 3 was subsequently amended and at all times here pertinent states:

> *All civil actions are commenced by filing a complaint and summons with the clerk of the court*. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint and summons, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued

for 30 days or is not served or is not returned within 30 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations . . . .[3] (Emphasis added.)

While Cary filed the original complaint on May 3, 1995, he did not file at that time a summons as required by Rule 3. The record reveals that it was not until May 30, 1995, when Cary filed the amended complaint, that all summons were filed. The trial court clerk issued summons as to all defendants except Rite-Aid Pharmacy on May 30, 1995. The summons as to Rite-Aid Pharmacy, while filed with the 5/30/95 amended complaint, was not issued by the trial court clerk until July 19, 1995. It appears to the Court that the action was commenced on May 30, 1995, the date the amended complaint and summons were filed and the date the summons were issued. Therefore, the action is barred by the one year statute of limitations applicable to medical malpractice claims.

Appellant asserts that he should not be required to file a lawsuit prior to his knowledge of his injury. In support of this assertion, Appellant cites Tennessee case law which holds that the statute of limitations does not start to run until the cause of the injury is discovered or should have been discovered and the identity of the tort-feasor is known or should have been known. *See McCrosky v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1974); *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974). However, these cases address situations in which the plaintiffs could not have discovered the causes of action within adequate time to bring a timely action. Cary relies upon *Gilbert v. Jones*, 523 S.W.2d 211 (Tenn. 1974), for the proposition that the discovery rule should apply to toll the statute of limitations until such time as the defendants are identified. However, as noted by *Webber v. Union Carbide Corp*., 653 S.W.2d 409, 412 (Tenn. App. 1983),

There is nothing in *Gilbert* to suggest, however, that the statute should have been tolled until the plaintiff could identify as defendants the manufacturers of specific ingredients or substances contained in the contraceptives. Once the contraceptives were recognized as the cause of the illness, the cause of action accrued.

*Webber*, 653 S.W.2d at 412.

---

[3]Effective July 1, 1997 Rule 3 is amended to delete the words "and summons." The advisory commission comment notes that deletion of the requirement of filing a summons in addition to a complaint returns the requirement for commencement to pre-1992 status.

The discovery rule codified at T.C.A. § 29-26-116(a)(2) states: "In the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year from the date of such discovery." As held by our supreme court in *Roe v. Jefferson*, 875 S.W.2d 653 (Tenn. 1994), the discovery rules applies:

> [O]nly in cases where plaintiff does not discover and reasonably could not be expected to discover that he has a right of action. . . . the statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person is not put on inquiry.

*Roe*, 875 S.W.2d at 656-57 (quoting *Hoffman v. Hospital Affiliates, Inc.,* 652 S.W.2d 341, 344 (Tenn. 1983)). The *Roe* court noted that a plaintiff need not actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a right of action. Instead, the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. *Id*. at 657. Furthermore, the supreme court held in *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995), that a plaintiff need not have the advice of a professional regarding a possible cause of action in order for the statute of limitations to accrue.

In *Roberts v. Berry*, 541 F.2d 602 (6th Cir. 1976), the Sixth Circuit, applying Tennessee law to a loss of consortium claim, held that the statute of limitations begins to run when the consortium is lost and not when the tortious conduct is discovered. *Roberts*, 541 F.2d at 610. The Supreme Court noted that loss of consortium is a gradual injury and the statute of limitations begins to run when the husband knows or should have known of the errant conduct by his wife. *Broidioi v. Hall*, 218 S.W.2d 737, 738 (Tenn 1949). In the instant case, it is not known when the consortium was lost, but it is clear it was sometime before May 26, 1994.

Examination of the record filed in this Court leads to the conclusion that Appellant knew of the existence of a cause of action no later than May 26, 1994. The amended complaint filed May 30, 1995, stated that Cary "learned of these acts of malpractice in the latter part of May, 1994." In a subsequent affidavit filed August 30, 1995, Cary stated that he discovered the alleged malpractice on May 26, 1994, when he met with Dr. Bourne. After that meeting, Cary began an

investigation into Mrs. Cary's prescription records. In the separate divorce proceeding, Cary filed a counterclaim on September 30, 1994, in which he stated under oath that the Carys' final separation occurred on May 24, 1994. In that pleading, Cary stated that Ms. Cary had denied him his conjugal rights "for a long period of time prior to the final separation." Furthermore, it is evident from Dr. Bourne's affidavit filed August 23, 1995, that the Carys had been having marital difficulties before May 24, 1994. Mr. Cary had informed Bourne of the situation as early as November, 1991, and Bourne was aware that the Cary's had taken separate vacations and maintained separate checking accounts prior to their separation.

On October 16, 1995, Cary filed a supplemental affidavit in which he stated that he knew about his wife' drug addiction by May 26, 1994, when Dr. Bourne met with Cary and showed him the prescriptions that Ms. Cary had altered, but Cary stated he did not know about the doctors' and pharmacies' alleged malpractice until June 20, 1994, when he had completed his investigation into his wife's prescription records. It is undeniable that Cary had stated in previous affidavits and pleadings that he knew about the alleged malpractice as of May 26, 1994. Therefore, the Court questions the probative value of Cary's inconsistent statements. *See Price v. Becker*, 812 S.W.2d 597, 598 (Tenn. App. 1991) (two sworn inconsistent statements by a party are of no probative value in establishing a disputed issue of material fact). In spite of these inconsistencies, the evidence contained in the record before this Court points to May 26, 1994, as the date on which the statute of limitations began to run.

On May 26, 1994, Cary knew that he and his wife had separated two days earlier on May 24, and he admitted that they had not had conjugal relations for a long period of time before the separation. He knew from the meeting with Dr. Bourne that Ms. Cary was addicted to drugs as evidenced by the fact that she had altered prescriptions in order to obtain them. Furthermore, Cary had admitted that the couple had been having extreme difficulties as early as November, 1991, that they took separate vacations and maintained separate checking accounts. Cary even stated in a pleading filed in this cause that he knew about the alleged wrongful acts of the defendants by May 26, 1994, and it is undisputed that as a result of the May 26, 1994, meeting between Dr. Bourne and Mr. Cary that Cary immediately began an investigation into his wife's prescription records.

Contrary to the argument advanced in Cary's brief, we do not find that by adopting the appellees' position regarding the accrual of the statute of limitations period, that Cary would have been required to file suit on May 26, 1994. Nonetheless, we conclude that the one year statute of limitations provided by T.C.A. § 29-26-116(a)(1) (1996) began to run on May 26, 1994. As our supreme court stated in *Roe v. Jefferson*, 875 S.W.2d 653 (Tenn. 1994):

> It is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a "right of action"; the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.

*Roe*, 875 S.W.2d at 657.

It is evident that the cause of action accrued on or before May 26, 1994, and the statute of limitations expired on May 26, 1995. Cary admitted that he knew of his wife's alleged drug addiction by May 26, 1994, and that he and his wife had been separated on May 24, 1994. Cary was on inquiry notice on or before May 26, 1994, and his failure to properly commence a lawsuit within one year of that date bars the instant action. Therefore, we affirm the trial court's dismissal of the cause on the basis that the statute of limitations had expired before Cary commenced the proceedings on May 30, 1995, when he filed the summons and amended complaint.

**TERMINATION OF MARRIAGE**

Cary alleges that the defendants caused his wife to become addicted to prescription drugs, which in turn led to the termination of the marriage. Linda Cary is not a party to the instant proceeding. Instead, Cary's claims arise solely from the termination of his marriage.

Tennessee does not recognize a cause of action for termination of a marriage. Formerly, Tennessee recognized two causes of action related to interference with the marital relationship: (1) criminal conversation and (2) alienation of affections. *Lentz v. Baker*, 792 S.W.2d 71, 73 (Tenn. App. 1989). All causes of action for termination of a marriage have been abolished

in Tennessee.

In 1989, the Tennessee General Assembly abolished the tort of alienation of affections. Specifically, T.C.A. § 36-3-701 (1996) states: "The common law tort action of alienation of affections is hereby abolished." Alienation of affections has been defined as "willful and malicious interference with the marriage relation by a third party, without justification or excuse." *Dupuis v. Hand*, 814 S.W.2d 340, 343 (Tenn. 1991) (quoting *Donnell v. Donnell*, 415 S.W.2d 127, 132 (Tenn. 1967)). The Tennessee Supreme Court in *Dupuis* abolished the common law tort for alienation of affections. *Id*. at 346.

Similarly, the Tennessee General Assembly and Supreme Court also have abolished the tort of criminal conversation. In 1990, the general assembly enacted T.C.A. § 39-13-508(a) (1991) which states in relevant part: "On or after January 1, 1991, no cause of action shall be maintained that is based upon the common law torts of seduction or criminal conversation, and such torts are hereby abolished." In *Hanover v. Ruch*, 809 S.W.2d 893 (Tenn. 1991), the supreme court abolished the common law tort of criminal conversation. *Hanover*, 809 S.W.2d at 898.

In his complaint, Cary alleged the following:

> The actions and conduct of herein listed Defendants constituted a negligent, gross, wilful, wanton and total disregard for Linda Kay Cary's health and welfare. As a direct and proximate result of the actions of the Defendants, Wesley Cary's marriage has become irreconcilably broken. Until the drug addiction, Plaintiff, Wesley Cary, and Linda Kay Cary had had a completely normal, productive, harmonious relationship as husband and wife, and but for this breach of the acceptable standards of professional care, would have been able to continue these relationships.

Examination of Cary's complaint reveals that it is based on the tort of alienation of affections. Tennessee does not recognize this cause of action for interference with a marriage, regardless of whether the interference is intentional or negligent. Accordingly, Cary has failed to state a claim upon which relief may be granted.

Cary asserts that his claim constitutes loss of consortium with his wife. Regardless

of the name appended to the claim, it is still a claim for alienation of affections. The supreme court noted in *Dupuis*, "[t]he gist of the alienation of affections tort is the loss of consortium . . . ." *Dupuis*, 814 S.W.2d at 343 (quoting *Kelley v. Jones*, 675 S.W.2d 189, 190 (Tenn. App. 1984)). Recently, the Tennessee Supreme Court addressed the comparative fault aspects of a claim for loss of consortium in *Tuggle v. Allright Parking Systems, Inc.*, 922 S.W.2d 105 (Tenn. 1996). In that case, the court noted that, while the claim for loss of consortium is a claim independent from that of the injured spouse for other damages, it is also a derivative claim in that the physical injuries or incapacities of one's spouse give rise to and establish the claim. *Tuggle*, 922 S.W.2d at 108, *see also, Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. App. 1979); *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 178 (Tenn. App. 1987).

In *Tuggle*, the supreme court held that Tennessee was not one of the minority of jurisdictions that recognize a different and independent cause of action for loss of consortium. The court held:

> *In contrast to the Tennessee approach,* a small number of jurisdictions view a claim for loss of consortium as an essentially different and independent cause of action from the physically injured spouse.

*Tuggle*, 922 S.W.2d at 108. (Emphasis added.) The supreme court further held that, in states such as Tennessee which follow the majority approach, a claim for loss of consortium is regarded as derivative of the principal claim for injuries. Relying on the Hawaii Supreme Court's decision in *Mist v. Westin Hotels, Inc.*, 738 P.2d 85, 90, (Haw. 1987), the Tennessee Supreme Court stated:

> [T]here must be a tort which gives rise to a cause of action that must be maintained by the [physically] injured spouse in order for the non-injured spouse to claim a loss of consortium. In other words, the loss of consortium claim is dependent upon the negligent injury of the other spouse who has the primary tort cause of action.

*Id.* at 109.

Other jurisdictions which have addressed this situation have declined to permit a party

to circumvent an abolished tort by artful drafting. In *Koestler v. Polland*, 471 N.W.2d 7 (Wis. 1991), the plaintiff filed a suit for intentional infliction of emotional distress arising from the defendant's adulterous affair with and impregnation of the plaintiff's wife. Under Wisconsin law, a cause of action for intentional infliction of emotional distress is an independently viable claim for which recovery may be had. However, in addressing the case, the Wisconsin Supreme Court observed that plaintiff's claim was really one for criminal conversation which had been abolished. *Koestler*, 471 N.W.2d at 9. Therefore, the court did not permit the defendant to recover for an otherwise viable claim because to do so would undermine the state statute abolishing criminal conversation. *Id*. at 10. Similarly, in *Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907 (Neb. 1993), the Nebraska Supreme Court affirmed the dismissal of a loss of consortium claim because it was essentially a claim for criminal conversation and alienation of affections. Those torts had been abolished by state statute; therefore, a cause of action did not exist. *Schieffer*, 508 N.W.2d at 912. *See also, Speer v. Dealy*, 495 N.W.2d 911, 913 (Neb. 1993).

In the instant proceeding, Cary cannot label as loss of consortium what is really a claim for alienation of affections because that tort has been abolished in Tennessee by both the general assembly and the supreme court. Cary has failed to state a cause of action upon which relief may be granted.

As noted, *Tuggle* cited the holding in *Mist*. We have not addressed the question of whether the injured spouse must maintain their cause of action in order for the non-injured spouse to claim a loss of consortium as that issue is not before us.

## CLAIMS AGAINST RITE-AID

Rite-Aid of Tennessee, Inc. asserts that it was never properly named as a party to this action. The complaint names Rite-Aid Pharmacy #1402 as a defendant, but that entity was not served with process. Instead, the registered agent for Rite-Aid of Tennessee, Inc., the correct corporate party, was served with process on August 1, 1995. Simply stated, the named defendant, Rite-Aid Pharmacy #1402, was never served in this matter, and the correct corporate party, Rite-Aid

of Tennessee, Inc., was served but never named as a party in either the original or amended complaints. Therefore, no action was commenced against Rite-Aid of Tennessee, Inc.

Even if the Court were to ignore the procedural irregularities as to the named defendant, it is apparent from the foregoing analysis that the cause of action was not commenced timely as to any defendants, including Rite-Aid. Rite-Aid asserts that its summons was not filed until July 19, 1995, which was also the date it was issued by the trial court clerk. That proposition is not supported by the record on appeal, and Rite-Aid does not offer any contrary proof. While it is undeniable that the trial court clerk issued the summons as to Rite-Aid on July 19, 1995, the record on appeal indicates that all summons, including Rite-Aid's, were filed with the amended complaint on May 30, 1995. Nonetheless, regardless of whether the Rite-Aid summons was filed on May 30 or July 19, the cause of action was not commenced timely as to Rite-Aid or to any other defendant. For the foregoing reasons, we find that in spite of the procedural irregularities concerning the proper named party, the cause of action as to Rite-Aid was not timely commenced within one year of the accrual of the cause of action. Accordingly, said claim is time-barred by the statute of limitations. The trial court's May 2, 1996, order granting summary judgment in favor of Rite-Aid is affirmed.

## FRIVOLOUS APPEAL

In his brief, Robert L. Horton, D.D.S., requested imposition of damages against Cary on the basis that the appeal is frivolous. After due consideration of this issue, the Court finds that the issue is not well-taken, and the Court declines to award said damages.

## CONCLUSION

For the foregoing reasons, the Court is of the opinion that the orders of the trial court dismissing Mr. Cary's claims against the defendants should be and are affirmed. Costs are taxed to the plaintiff, Wesley Cary, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)


_____
LILLARD, J. (Concurs)