**Walter A. DUPUIS, Plaintiff/Appellee,**

**v.**

**Charles W. HAND, Defendant/Appellant.**

Supreme Court of Tennessee,
at Nashville.

April 22, 1991.

Steve North, William J. Harbison, Nashville, for defendant, appellant.

Mart G. Fendley, Clarksville, for plaintiff, appellee.

## OPINION

ANDERSON, Justice.

This alienation of affections case raises two issues for resolution. The first is whether a trial judge designated by the Chief Justice is the only trial judge with the power to render a judgment. The second is whether the common-law tort of alienation of affections has been or should be abolished in this case.

We have determined that the trial judge in this case had the authority under Tennessee statutes to hear and determine this case, even though he was not the designee of the Chief Justice. Accordingly, we reverse the decision of the Court of Appeals which dismissed the appeal on the procedural ground there was "no recognizable judgment" for review. Because of the policy nature of the merits of this action, and in the interest of judicial economy, we elect not to remand to the Court of Appeals, but rather to consider the substantive issue. We have decided to abolish the common-law action for alienation of affections. Consequently, we affirm the Chancellor's order of summary judgment in favor of the defendant, but on different grounds.

## PROCEDURAL HISTORY

The plaintiff, Walter A. Dupuis, filed this action for alienation of affections against the defendant, Charles W. Hand, in the Circuit Court of Montgomery County, Tennessee, on August 4, 1986. By the time this case reached the Court of Appeals, no less than four trial judges had participated in the litigation.

Circuit Judge James E. Walton considered and ruled upon several preliminary matters before recusing himself in October of 1986. Judge Thomas Boyers, IV, a Circuit Judge from an adjoining circuit, thereafter sat by interchange, with the consent of both parties, until his death in the spring of 1989.

Judge Thomas C. Goodall, III, was duly appointed by the Governor as the successor to Judge Boyers after the latter's death. Once again, both parties consented and acquiesced to the authority of Judge Goodall to preside over this case. The defendant filed a motion for summary judgment, which Judge Goodall heard and granted by order entered July 27, 1989. Judge Goodall held that the defendant was entitled to summary judgment as a matter of law, because the Tennessee General Assembly had abolished the tort of alienation of affections on May 25, 1989, effective July 1, 1989.

Unbeknownst to the parties or their counsel, on May 22, 1989, Judge Walton requested that another judge be designated due to the untimely death of Judge Boyers. On June 14, 1989, Chief Justice Frank F. Drowota, III, designated Judge Joe C. Loser, Jr., to sit in place of Judge Walton. This designation was filed in the office of the Circuit Court Clerk of Montgomery County. On August 11, 1989, unaware that a summary judgment motion had already been sustained by Judge Goodall, Judge Loser signed an order directing that a pretrial conference be held. Meanwhile, the plaintiff filed a notice of appeal of the summary judgment order of Judge Goodall to the Court of Appeals.

The Court of Appeals refused to consider the merits of the plaintiff's appeal; acting *sua sponte*, it held that the court "cannot recognize or review a judgment" rendered by anyone but the judge designated by the Chief Justice. Accordingly, the Court of Appeals dismissed the appeal, and remanded the case to the trial court for disposition by Judge Loser. We granted the plaintiff's application for permission to appeal to determine the important questions of procedure and policy raised by the appeal.

## VALIDITY OF JUDGMENT

### DESIGNATION AND INTERCHANGE OF TRIAL JUDGES

We begin our analysis of the authority of the trial judge to render judgment in this case by an examination of the legislative statutes which grant judges the authority to act.

 Interchange of trial judges is authorized by Tennessee Code Annotated, § 17–2–201, which provides that

circuit judges may interchange with each other or with judges of special courts for one or more courts, ... when causes exist making an interchange necessary, or for mutual convenience; and, in the absence of the judge of any circuit, his death, or inability to hold court, any circuit judge may hold court in his stead. Such interchange may be for the entire circuit, a single term, a part thereof, or for a special case. *Elms v. State,* 29 Tenn. 128 (1849). There is no requirement that application be made to the Chief Justice for assignment of a judge to a particular case. *State ex rel. Stall v. City of Knoxville,* 211 Tenn. 271, 364 S.W.2d 898 (1962), *cert. denied,* 372 U.S. 914, 83 S.Ct. 728, 9 L.Ed.2d 721 (1963). The judge interchanging has the same power and jurisdiction as the judge he or she replaced. *See* Tenn.Code Ann. § 17–2–206.

Designation of special trial judges is authorized by Tennessee Code Annotated, §§ 17–2–109 and –110, which provide for appointment of special judges by the Chief Justice to relieve delay in the disposition of litigation, or upon the certification of a trial judge of his or her inability to try a case. Tennessee Code Ann. § 17–2–109(c) provides that "[n]othing herein shall be construed to interfere with the appointment of special chancellors or judges *as provided elsewhere by statute.*" (Emphasis added.)

■ Tennessee Code Annotated, § 17–2–101, provides that even where a trial judge is otherwise incompetent, that trial judge may preside by consent of all parties. An objection to a judge's competence cannot be made for the first time on appeal; the objection should come before trial is had on the merits. *See Rowe v. Greer,* 32 Tenn. 172 (1852); *Hilton v. Miller & Co.,* 73 Tenn. 395 (1880); *Obion County ex rel. Houser Creek Drainage District v. Coulter,* 153 Tenn. 469, 284 S.W. 372 (1926). Moreover, Tenn.Code Ann. § 16–2–502 provides that "any judge or chancellor may exercise by interchange, appointment, or designation the jurisdiction of any trial court other than that to which such judge or chancellor was elected or appointed."

■ We conclude that both Judge Goodall and Judge Loser had concurrent authority, by interchange and designation respectively, to preside over this case. Judge Goodall's earlier exercise of that authority, without objection by either party, was valid under the interchange statute. Therefore, we hold that the defendant's appearance in Judge Goodall's court without objection was a waiver of the defendant's right to challenge Judge Goodall's authority. For these reasons, that portion of the Court of Appeals' order dismissing the appeal and remanding is reversed.

■ Typically at this point, we would remand to the Court of Appeals for consideration of the plaintiff's appeal on the merits. In this case, however, the Eastern Section of the Court of Appeals has already concluded that the tort of alienation of affections should be abolished, but that as an intermediate appellate court it was without the power to do so. *See Lentz v. Baker,* 792 S.W.2d 71 (Tenn.App.1989). The Court of Appeals urged the Legislature and this Court to abolish the torts.[1] Under these peculiar circumstances and for reasons of judicial economy, we find that a remand to the Court of Appeals would be inappropriate. Therefore, we exercise our discretion pursuant to Tenn.R.App.P. 13(a), to consider the viability of alienation of affections actions in Tennessee.

## ABOLITION OF ALIENATION OF AFFECTIONS

■ The common-law tort of alienation of affections was abolished by the General Assembly of Tennessee as of July 1, 1989:

SECTION 1. The common law tort action of alienation of affections is hereby abolished.

SECTION 2. Tennessee Code Annotated, Section 28–3–105, is amended by deleting subdivision (4) in its entirety.

---

**1.** We have since abolished the common-law tort of criminal conversation. *See Hanover v. Ruch,*

809 S.W.2d 893 (Tenn.1991).

SECTION 3. The bill shall take effect on July 1, 1989, the public welfare requiring it.

Chapter 517, Public Acts of Tennessee 1989.

The defendant first argues Judge Goodall correctly held that this statute abolished actions for alienation of affections retrospectively and accordingly, even though plaintiff's action had been filed and was pending prior to the date of the passage of the act, it was abolished. In *Hanover v. Ruch*, 809 S.W.2d 893 (Tenn.1991), however, we held that Article I, Section 20 of the Tennessee Constitution prohibits retroactive application of statutes affecting vested common-law rights to previously-filed cases. As we observed in *Hanover*,

First, the General Assembly is without authority to enact a retrospective law, affecting vested substantive rights. Tenn. Const. art. I, § 20.[2] Where a statute alters the common law and results in deprivation of a valuable common-law right, such statute cannot constitutionally be applied retroactively. *See Massey v. Sullivan County*, 225 Tenn. 132, 464 S.W.2d 548 (1971). ...[3]

Determining the status of the common law in effect on the date of filing is within the exclusive jurisdiction of this Court. Thus, the statute itself contemplates that the Supreme Court, not the Legislature, has the power to abolish a common-law tort retrospectively.

Accordingly, because we have previously held the Legislature is without authority to enact a retrospective statute affecting vested substantive rights, the statute abolishing the tort of alienation of affections does not affect this case.

Consequently, we now consider whether this Court should abolish the tort of alienation of affections. In *Lentz v. Baker*, 792 S.W.2d 71 (Tenn.App.1989), the Court of Appeals discussed the history of this common-law tort action, its origin and development, and the reasons for abolishment as follows:

The tort had its genesis in early Roman Law when the *paterfamilias*, or head of the household, had an action for violence committed against his wife, children or slaves on the theory they were so identified with him the wrong was to himself. By the Thirteenth Century, the common law had adopted the idea in part, altering it to a damage action for loss of services of the servant because of violence. In 1349, because of the Black Death and the resulting shortage of labor, England enacted a statute requiring compulsory labor and granting a damage remedy for loss of services to an employer whose servant was enticed away. Since the station of a wife under early common law was that of a valuable superior servant of the husband, the action was extended to include the loss of her services by enticement. The action of alienation of affections was first recognized by New York in 1866 and accepted at common law by all of the states except Louisiana. *See generally* W. Prosser, *The Law of Torts*, § 124 (4th ed. 1971). Over the years emphasis shifted away from loss of services toward a recognition of the intangible elements of domestic relations, such as companionship and affection.

In Tennessee the tort of alienation of affections "is the willful and malicious interference with the marriage relation by a third party, without justification or excuse." *Donnell v. Donnell*, 220 Tenn. 169, 415 S.W.2d 127, 132 (1967). "The gist of the alienation of affections tort is the loss of consortium.... Consortium is not a property right in one's spouse; rather, it is

**2.** "No retrospective laws.—that no retrospective law, or law impairing the obligations of contracts, shall be made."

**3.** In contrast, retroactive application of judicial changes in the common law is a unique feature of common law adjudication. For example, in *Davis v. Davis*, 657 S.W.2d 753 (Tenn.1983), this Court abolished interspousal tort immunity, and applied its decision retrospectively:

The trial judge was correct, under the then-existing law, in granting the motion for summary judgment. However, we have decided that the rule applied has been orphaned by logic and reason, and direct that the summary judgment be set aside and the matter remanded for further proceedings consistent with this opinion.

*Id.* at 759.

a right of each to the company, cooperation, affection, aid and support of the other." *Kelley v. Jones*, 675 S.W.2d 189, 190 (Tenn.App.1984) (citations omitted).

Because the action has been peculiarly susceptible to abuse, thirty-five states have abolished or limited it either legislatively or judicially.[4] According to Professor Prosser, the action has "afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement." He comments that "even genuine actions ... are brought more frequently than not with purely mercenary or vindictive motives; ... it is impossible to compensate for such damage with what has derisively been called "heart balm." W. Prosser, *supra*, § 124 at 887.

As early as 1890, Massachusetts had rejected the action, and other states began to reject and limit the action in the 1920s. Legal writers were critical of the action, citing its uncertain basis in damages and the fact that damages were largely punitive in nature. They also were concerned that it had no proper place in modern law in view of its history. The action for alienation of affections, as well as criminal conversation, originated in the husband's power over the wife and was initially restricted to the husband alone. With the emancipation of the wife, it was argued that the original basis for both of the actions was removed and should have resulted in their total abolition. Other reasons cited for change lie in the peculiar susceptibility to abuse that both the actions of alienation of affections and criminal conversation are subject. Because sexual behavior is a characteristic which usually distinguishes

these actions, it was thought that emotion and moral indignation prevail over considerations of injury in the assessment of damages. Still another reason for abolition was that the actions attract disproportionate publicity and as a result of the combination of factors, encourage unfounded claims and induce innocent defendants to enter into extra-judicial settlements. Many state legislatures which have abolished the action have cited these reasons. Legal writers have also expressed the opinion that legislative abolishment occurred because of a recognition of changed social concepts of family solidarity and functions. The statutes relax traditional legal controls by recognizing and protecting increased freedom of association between each spouse and the outside world. *See generally* Brown, *The Action for Alienation of Affections*, 82 U.Pa.L.Rev. 472 (1934); Feinsinger, *Legislative Attack on "Heart Balm"*, 33 Mich.L.Rev. 979 (1935).

In the midst of the social ferment of the 1960s, Professor Clark summarized the arguments for abolishment:

The reasons underlying abolition of alienation of affections are many and persuasive. One is the opportunities for blackmail which the action provides, since the mere bringing of the action can ruin the defendant's reputation. Another is that lack of any reasonably definite standards for assessing damages and the possibility of punitive damages makes excessive verdicts likely. Still another is the peculiar light which the whole proceeding throws on the nature of marriage, leaving one with the conviction that the successful plaintiff has engaged in something which looks very much like

---

**4.** Alienation of affection actions have been abolished in the following states: 1) Arizona, 1983–1984; 2) California, 1982; 3) Colorado, 1973; 4) Connecticut, 1983; 5) Delaware, 1974; 6) District of Columbia, 1981; 7) Florida, 1945; 8) Georgia, 1980; 9) Indiana, 1982; 10) Maine, 1964; 11) Maryland, 1984; 12) Michigan, 1935; 13) Minnesota, 1982; 14) Montana, 1983; 15) Nevada, 1979; 16) Oregon, 1981; 17) Texas, 1987; 18) Virginia, 1950; 19) West Virginia, 1983; 20) Wisconsin; 21) Wyoming, 1977; 22) Iowa, 1981; 23) Washington, 1976); 24) Idaho, 1986.

Six other jurisdictions, by statute, have limited the cause of action to permit injunctive relief only and allow no money damages: 1) Alabama, 1975; 2) Florida, 1981; 3) New Jersey, 1952; 4) New York, 1976; 5) Ohio, 1981; and 6) Vermont, 1984.

Oklahoma and Pennsylvania have statutorily abolished the cause of action for alienation of affection with only insignificant exceptions. Arkansas, Kentucky, and Rhode Island have shortened their statute of limitations to one year.

Seichter, *Alienation of Affection: Gone but Not Forgotten*, 10 Fam.Advoc. 23, 45 (1987).

a forced sale of his spouse's affections. Most significantly of all, the action for alienation is based upon psychological assumptions that are contrary to fact. As has been indicated, viable, contented marriages are not broken up by the vile seducer of the Nineteenth Century melodrama, though this is what the suit for alienation assumes. In fact the break-up is the product of many influences. It is therefore misleading and futile to suppose that the threat of a damage suit can protect the marital relationship. For all these reasons the abolishing statutes reflect a sound public policy and ought to be enacted more widely than they are.

H. Clark, *The Law of Domestic Relations in the United States*, § 10.2, at 267 (1968).

More recently, the Supreme Court of Iowa judicially abolished the action of alienation of affections in *Fundermann v. Mickelson*, 304 N.W.2d 790 (Iowa 1981), because the court was convinced the action is absolutely useless as a means of preserving families, but instead demeans the parties and the courts. The court reasoned the action was based on an illusion that the action protected families from destabilizing outside influences, and was not a deterrent to misconduct. The court concluded:

> In the last analysis we think the action should be abolished because spousal love is not property which is subject to theft. We do not abolish the action because defendants in such suits, need or deserve our protection. We certainly do not do so because of any changing views on promiscuous sexual conduct. It is merely and simply because the plaintiffs in such suits do not deserve to recover for the loss of or injury to "property" which they do not, and cannot, own.

*Fundermann*, 304 N.W.2d at 794.

The Supreme Court of Washington likewise judicially abolished the alienation of affections action, affirming a Court of Appeals decision and approving the following reasons for abolition:

> (1) The underlying assumption of preserving marital harmony is erroneous; (2) The judicial process is not sufficiently capable of policing the often vicious out-of-court settlements; (3) The opportunity for blackmail is great since the mere bringing of an action could ruin a defendant's reputation; (4) There are no helpful standards for assessing damages; and (5) The successful plaintiff succeeds in compelling what appears to be a forced sale of the spouse's affections.

*Wyman v. Wallace*, 94 Wash.2d 99, 615 P.2d 452, 455 (Wash.1980).

■ We find the enumerated reasons for abolishment persuasive. As we commented in *Hanover*:

> [W]e have not hesitated to abolish obsolete common-law doctrines. Indeed, we have a special duty to do so where it is the Court, rather than the Legislature, which has recognized and nurtured the action.
>
> [W]e abdicate our own function, in a field peculiarly non-statutory, when we refuse to consider an old and court-made rule.

809 S.W.2d 893 (Tenn.1991). *See also Kilbourne v. Hanzelick*, 648 S.W.2d 932, 934 (Tenn.1983) (abolishing discriminatory rule denying liability of wife for support of husband); *Davis v. Davis*, 657 S.W.2d 753, 758 (Tenn.1983) (abolishing interspousal tort immunity doctrine). *See also Ford Motor Co. v. Lonon*, 217 Tenn. 400, 398 S.W.2d 240 (1966) (abolishing privity requirement in strict tort). Since the Court clearly has the power to consider old, court-made rules in the absence of statutory guidance, and since the Legislature may not constitutionally preclude such consideration, it would be anomalous for the Court to refuse such consideration where, as here, the Legislature has clearly expressed the public policy of the state.

We are not unmindful of the precedential value of previous Tennessee cases.

> [O]ur commitment to *stare decisis* remains strong. Confidence in our courts is to a great extent dependent on the uniformity and consistency engendered by allegiance to *stare decisis*. However, mindless obedience to this precept can confound the truth and foster an attitude of contempt.

*Davis v. Davis*, 657 S.W.2d 753, 758 (Tenn. 1983). As a live and breathing thing, the

law changes when necessary to serve the needs of the people. When this basic purpose of the law is slighted or overlooked, then it loses a high degree of its majesty. *Powell v. Hartford Accident & Indemnity Co.,* 217 Tenn. 503, 398 S.W.2d 727, 732 (1966). "Where the reason fails the rule should not apply." *Brown v. Selby,* 206 Tenn. 71, 332 S.W.2d 166, 169 (1960).

We agree with the Court of Appeals in *Lentz v. Baker, supra,* that the action does "diminish human dignity, demeans the participants, inflicts pain upon the innocent, and does not prevent human misconduct." We too are persuaded that "in the final analysis, the action does not protect marriage or the family—its only real justification—and the harm it causes far outweighs any reason for its continuance." Because we find that the reasons for the cause of action no longer exist, and because the public policy of the state, as expressed by the Legislature, is offended by alienation of affections actions, we hold that the common-law tort of alienation of affections is hereby abolished.

Consequently, we reverse the judgment of the Court of Appeals dismissing the appeal on the ground there was "no recognizable judgment" for review. We affirm the trial court summary judgment for the defendant, but on the separate basis of our abolition of the cause of action of alienation of affections. Costs of this appeal are taxed to the Appellee.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ.