Karen Melissa Wills WILSON, Plaintiff,

v.

**Robyn Hayes WILSON, Defendant.**

**In re Thomas E. COWAN, Jr., Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Dec. 14, 1993.

Permission to Appeal Denied by
Supreme Court May 9, 1994.

Charles W. Burson, Atty. Gen. & Reporter and Jeannie Kaess, Asst. Atty. Gen., Nashville, for the State of Tenn.

Thomas E. Cowan, Jr., Cowan & Landstreet, P.C., pro se.

## OPINION

FRANKS, Judge.

Appellant appeals from a judgment in the Carter County Chancery Court judging him guilty of contempt pursuant to T.R.Cr.P. Rule 42(b).

Appellant was the attorney for Karen Wilson in a divorce action against her husband, Robyn Wilson. On January 29, 1992, the appellant appeared before a Trial Court Judge, presented a complaint and affidavit of Karen Wilson and obtained a temporary restraining order ordering her husband not to interfere with Karen Wilson's "exclusive" possession of a 1991 BMW motor vehicle. At

a subsequent hearing before another trial judge, it was determined that Karen Wilson did not have possession of the motor vehicle at the time the restraining order was obtained, and that Judge summarily found appellant in contempt and imposed ten days confinement as punishment for misrepresenting material facts to a Judge and abusing the Court's extraordinary powers.

Within thirty days, the Trial Judge filed an order reciting that the Tennessee Rules of Criminal Procedure 42(a) and 42(b) govern the charges against appellant, and reaffirmed his findings of fact and judgment as to contemptuous statements made in the Court's presence as a 42(a) conviction but scheduled a subsequent hearing as to the alleged contemptuous statement the appellant had made out of court.

Appellant appealed and this Court on August 21, 1992, held that the appellant's 42(a) conviction was invalid, as summary contempt proceedings under 42(a) may not be based upon extrinsic evidence. Appellant's conviction was set aside and the cause remanded for a new trial.

The Presiding Judge of the First Judicial District requested the Presiding Judge of the Second Judicial District to designate a Second District Judge to hear the contempt charges, and the Presiding Judge of the Second Section appointed himself to hear the case. A trial was held on December 9, 1992, and the Trial Judge found the evidence did not support the 42(a) charges against appellant, but did find the appellant in contempt for drafting a complaint, affidavit and temporary restraining order and making representations which misled the Trial Judge into believing Karen Wilson had actual possession of the motor vehicle at the time the temporary restraining order was issued.

■ Appellant insists the second contempt trial in December of 1992 constituted double jeopardy. We cannot agree, the Rule under both the State and Federal Constitutions is that "in a case where the defendant seeks and obtains the invalidation of a judgment and dismissal is based on technical procedural grounds, there is no former jeopardy prob-

lem in retrial." *State v. Campbell,* 641 S.W.2d 890, 893 (Tenn.1982).

This Court reversed the appellant's first conviction for contempt of court because extrinsic evidence was required to convict the appellant in the 42(a) proceeding, which was error.

■ In this regard, appellant's first appeal to this Court only brought his 42(a) conviction before the Court. Accordingly, the subsequent 42(b) conviction could not constitute double jeopardy, since the elements of that offense were not identical to the 42(a) charges. Without this identity of offenses, double jeopardy is not a defense. *Pryor v. Rose,* 724 F.2d 525 (6th Cir.1984). The 42(a) charge consisted of misrepresentations the appellant allegedly made in open court, while in contrast, the 42(b) charges consisted of misrepresentations appellant allegedly made to Judge Brown out of court and on another occasion.

■ Assuming, *arguendo,* that double jeopardy attached to the original 42(a) trial, such jeopardy would not preclude the Trial Judge from trying appellant on the 42(b) charges. A more important reason that appellant may not rely on the defense of double jeopardy, is that the original 42(a) conviction was a nullity. A null judgment is not a basis for the defense of double jeopardy, regardless of the circumstances giving rise to its nullity. In *Rivera v. State,* 1 Tenn.Crim. App. 395, 443 S.W.2d 675 (1969), it was observed that "it is fundamental that a defendant is not placed in jeopardy in a void criminal trial. . . . Where the judgment in the first trial was a nullity, the accused cannot plead former jeopardy in bar of the second trial." *Id.* at 677. More to the point is *State v. Brown,* 193 Tenn. 113, 244 S.W.2d 168 (S.Ct.1951), where the Trial Court had set aside the defendant's conviction of house breaking *sua sponte* on the grounds that the defendant was not present at the time his attorney entered a plea of guilty, and judgment was entered. *Id.* at 170. Subsequently, the Trial Court reheard the case with the defendant present, and accepted the defendant's plea of guilty. On appeal, the defendant claimed that the Trial Court's initial acceptance of the defendant's guilty plea by way of defendant's counsel constituted double jeopardy. The Supreme Court, however, held that "where the judgment in the first trial was a nullity, the accused cannot plead former jeopardy in bar of the second trial." As we noted in the appellant's original appeal, that while the Trial Judge recited that appellant had made false and misleading statements in the Court's presence, the truthfulness or falsity of such statements could not be determined without reference to another witness's testimony. Accordingly, the judgment of conviction under 42(a) was a nullity on its face.

■ Next, appellant insists that the Trial Judge neither had jurisdiction nor was competent to try appellant for contempt. The Trial Court's jurisdictional authority derives from T.C.A. § 16–1–102(4) which provides "every court has power . . . to control, in furtherance of justice, the conduct of its officers, and all other persons connected with the judicial proceeding before it, and every matter appertaining thereto. . . ." Moreover, T.C.A. § 16–1–103 provides that "for the effectual exercise of its powers, every court is vested with power to punish for contempt, as provided for in this Code."

The evidence establishes that appellant misrepresented facts to a Judge for the Chancery Court of Carter County. Accordingly, Carter County Chancery Court possessed the power to enforce standards of conduct upon appellant and to punish appellant for contempt for a violation of those standards. Sitting as a Chancellor in Carter County by interchange, the Trial Judge was clothed with the power to exercise the Carter County Chancery Court's statutory jurisdiction over the appellant. T.C.A. § 17–2–202 provides that "where a judge is incompetent to try any cause pending in his circuit, and the same cannot be transferred by change of venue to some other circuit, it shall be the positive duty of the circuit judge of any adjoining circuit, . . . to interchange with such incompetent judge and try such cause or causes. . . ." T.C.A. § 16–2–502 further provides "any judge or chancellor may exercise by interchange, appointment, or designation the jurisdiction of any trial court other

than that to which such judge or chancellor was elected or appointed."

Consequently, the Trial Judge had jurisdiction to try appellant for contempt under the interchange provisions of the Code. Because the appellant's charges of contempt implicated two judges in the First Judicial District as witnesses, all the judges of the First Judicial District recused themselves from hearing the case. Accordingly, the Presiding Judge of the First Judicial District requested a Judge from the Second Judicial District to hear the contempt proceedings. The designation to hear the charges of contempt in Carter County Chancery Court comports with the interchange statutes.

■ The appellant challenges the competency of the Trial Judge to hear the contempt charges, and in support of his argument points to T.C.A. § 17–2–110(a), which provides:

> "when any chancellor or circuit, criminal or appellate judge shall, for any reason, be unable to try the docket in any court of [his] division or circuit, [he] shall certify to the Chief Justice of the Supreme Court the fact of [his] inability with a request that the Chief Justice shall assign some other chancellor, circuit, criminal or appellate judge to hear the case or cases which [he] is unable to hear and decide."

Appellant asserts that by implication, a circuit judge of one judicial district may not interchange with the chancellor of another judicial district without the specific designation of the Chief Justice.

The argument is not persuasive. T.C.A. § 17–2–109(c) provides that "nothing herein shall be construed to interfere with the appointment of special chancellors or judges as provided elsewhere by a statute." The statutory provision to designate special judges to sit for incompetent judges does not nullify the statutory provisions allowing judges to interchange by consent. *Dupuis v. Hand,* 814 S.W.2d 340, 342 (Tenn.1991). Moreover, no objection to Judge Garrett's hearing the contempt proceeding was raised as to competency at the trial level, and appellant may not raise this issue for the first time on appeal. *Id.*

■ Finally, appellant argues that the evidence does not support the Trial Court's judgment under the Rule 42(b) proceeding that the appellant misrepresented a material fact to the Court in order to invoke the extraordinary powers of the Court to his client's advantage. Tennessee Rules of Appellate Procedure 13(e) provides "Findings of guilt in criminal actions whether by the Trial Court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." The parties are in agreement as to all the material facts in this case, and the question the appellant presents is essentially whether his actions constitute contempt as a matter of law.

A party is entitled to a restraining order "if it is *clearly shown by verified complaint or affidavit* that the applicant's rights are being or will be violated by the adverse party." (Emphasis supplied.) T.R.C.P. 65.-03. The complaint and affidavit presented to the Trial Judge by appellant did not clearly show Karen Wilson had possession of the motor vehicle or was entitled to possession. It was only through the representations of the attorney, as the Trial Judge testified, that established a basis for issuing the temporary restraining order. Appellant argues that his use of the term "possession" should be understood in the context that his client had a legal right to possession of the motor vehicle, rather than actual possession. The precise wording of the temporary restraining order that appellant drafted enjoined the husband from "interfering with [Ms. Wilson's] exclusive use and possession of … BMW…." The supporting affidavit drafted by appellant also refers to Ms. Wilson's exclusive possession of the motor vehicle. Clearly, the appellant's present argument that his client had exclusive possession of the motor vehicle is contrary to the use of the word possession he would have this Court believe he intended to use. Ms. Wilson did not have exclusive possession as the appellant represented.

■ Appellant also maintains that he complied with T.R.C.P. Rule 65.03, T.R.C.P. 65.07 and local Rules of Court, 9.06, which provides that injunctions designed to dispos-

sess someone of property must contain the phrase "the party herein restrained upon request to the Clerk may have a hearing on this order on the next court day following service." While the local Rule is not in the record, the argument is without merit, in any event. T.R.C.P. 65.01 provides: "A restraining order shall only restrict the doing of an act. An injunction may restrict or mandatorily direct the doing of an act." If the appellant intended to dispossess the husband of the motor vehicle he should have proceeded under Rule 65.04. It may reasonably be inferred from the evidence, that the appellant did not proceed under 65.04, since the Rule would require him to have given notice to the husband who was then residing in North Carolina with possession of the vehicle.[1]

Local rules in variance with the Rules of Civil Procedure are of no effect, and the argument that "everyone else does it too" is not a valid defense against failure to comply with the Rules of Civil Procedure.

In conclusion, the evidence supports the Trial Judge's finding of fact beyond a reasonable doubt that appellant misrepresented material facts to a judge and thus abused the use of the Court's extraordinary powers for the benefit of his client. Under any reasonable interpretation of appellant's statements as to possession of the motor vehicle, the conclusion is inescapable that it was represented to the Court that appellant's client had exclusive possession of the motor vehicle, when in fact she did not. This misrepresentation was properly punished as contempt of court and we affirm the judgment of the Trial Court, fining the appellant $50.00 and costs. The costs of the appeal are assessed to the appellant.

GODDARD and McMURRAY, JJ., concur.

---

1. The TRO was applied for and issued after the husband had entered Tennessee with the motor vehicle to visit with his child at a McDonald's restaurant.