# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### ASSIGNED ON BRIEFS JULY 11, 2001

## LINDSAY TAYLOR, RACHEL TAYLOR AND BRADFORD TAYLOR v. AL BEARD AND SOUTHEASTERN MOTOR FREIGHT COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. 84505 T.D.;  The Honorable Robert L. Childers, Judge**

---

**No. W2001-00347-COA-R3-CV - Filed November 5, 2001**

---

This appeal involves a grant of summary judgment, which dismissed loss of parental consortium claims brought by the children of a parent injured in an automobile accident.  The children seek review of existing Tennessee precedent that fails to recognize loss of parental consortium causes of action resulting from the personal injury of a parent.  For the following reasons, we affirm the decision of the trial court and decline to create a new cause of action.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Larry E. Parrish, Memphis, TN, for Appellants

Tim Wade Hellen, Memphis, TN, for Appellees

### OPINION

### Facts and Procedural History

On October 17, 1995, Al Beard collided with another vehicle while operating a truck for his employer, Southeastern Motor Freight Company, Inc. (Al Beard and Southeastern Motor Freight Company, Inc. will hereinafter be jointly referred to as "Appellees.")  The collision resulted in an impact with a third vehicle occupied by Pamela Taylor and her daughter, Lindsay Taylor.  The Taylor's vehicle, in turn, struck a fourth vehicle and exited the roadway.  Lindsay and Pamela Taylor suffered injuries in the accident.

The procedural background of this case is somewhat peculiar.  After negotiations, Appellees and Lindsay Taylor filed a Joint Petition for Approval of Minor's Settlement dated January 17, 1997

with the court, seeking ratification of a settlement agreement reached between Appellees and Lindsay Taylor. However, approximately one year later, before a settlement had been approved, a First Amendment to Joint Petition for Approval of Minor's Settlement ("Amendment") was filed by Lindsay Taylor. The Amendment substantially altered the course of litigation.

Although Lindsay Taylor was the only plaintiff in the original petition, the Amendment sought to add several new parties to the litigation including Lindsay Taylor's siblings, Rachel Taylor and Bradford Taylor ( Lindsay, Rachel and Bradford Taylor will hereinafter be jointly referred to as "Appellants.") The Amendment also sought to rename the original petition "Complaint for Personal Injury and Loss of Services" and demanded a jury. Further, consistent with the new name, the Amendment added new causes of action. The added cause of action at issue in this appeal concerns consortium damages; the Appellants demanded damages for loss of consortium resulting from the personal injuries suffered by their mother, Pamela Taylor, in the accident.

Appellees filed a motion to quash the Amendment and dismiss the original petition. After the court heard arguments on the matter, the court entered an Order Substituting Complaint for Joint Petition. Pursuant to the court's order, the original petition was deemed dismissed with the Amendment taking its place. Further, the court ordered that the Amendment should be considered a complaint as opposed to part of the original joint petition.

Appellees filed an answer, a motion to dismiss the claims of Rachel Taylor and Bradford Taylor, and a motion for summary judgment as to the claims of all Appellants for loss of consortium stemming from their mother's personal injuries. The court granted Appellees' motion for summary judgment and the case proceeded to trial. A jury returned a verdict in favor of Lindsay Taylor and awarded her $411,320.00 on the remaining claims.

On appeal, Appellants allege that the trial court erred in granting Appellee's motion for summary judgment, which dismissed Appellants' claims for loss of parental consortium. This Court has been asked to determine whether a claim for loss of consortium brought by a child for personal injuries to the child's parent should be recognized under Tennessee law. Appellants argue that the recent evolution of policies guiding Tennessee law reflects a need for this Court to extend consortium damages to the children of parents who suffer personal injury. We disagree and, for the following reasons, affirm the judgment below.

**Standard of Review**

Summary judgment is appropriate if the movant demonstrates that no genuine issues of material fact exist and that he is entitled to a judgment as a matter of law. See TENN. R. CIV. P. 56.03. We must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in his favor and discarding all countervailing evidence. See Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998) (citing Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)). With regard to questions of law, we review the record *de novo* with no presumption of correctness of the judgment below. See TENN. R. APP. P. 13(d); Bain v. Wells, 936 S.W.2d 618, 622

(Tenn. 1997). Because this appeal involves only an issue of law, we will conduct a *de novo* review of the issue set forth with no presumption of correctness.

## Law and Analysis

This Court has previously addressed the issue of whether a cause of action for loss of consortium exists for children whose parents are injured by the tortious acts of a third party. In Still v. Baptist Hospital, 755 S.W.2d 807, 808 (Tenn. Ct. App. 1988), this Court held that claims for loss of parental consortium are, and always have been, unknown to Tennessee's common law. Accordingly, for this Court to hold that such a cause of action now exists, we would be forced to overrule our decision in Still and create the cause of action ourselves.

Because a new cause of action has been requested, our analysis must begin with a discussion of this Court's role in defining the public policy of Tennessee. We acknowledge that a blind following of arcane principles of common law simply because of *stare decisis* should not be considered the mission of this Court. However, we must also acknowledge that Appellants' request is not aimed at removing obsolete law from our precedent or refining existing principles of law. Rather, Appellants seek the judicial creation of new law through a declaration of public policy not yet asserted by our General Assembly.

In Smith v. Gore, 728 S.W.2d 738, 747 (Tenn. 1987), the Tennessee Supreme Court recognized the difference between mere development of the common law and "positively declaring the public policy of the state." The distinction is even more apparent when the Court must "determine which of several competing public policies represents the most compelling and controlling public policy for this State." Id. When such indefiniteness surrounds an issue and proponents rest upon public policy in asking this Court to define the law, we must be aware of possible "usurpation of the powers of the legislature." Id. (quoting Cavender v. Hewitt, 239 S.W. 767, 768 (Tenn. 1921)).

This Court, in Still, followed these principles when refusing to create a common law claim for loss of parental consortium. We stated that deference to the legislature is more likely appropriate where far-reaching consequences would result from the creation of new law. Still, 755 S.W.2d at 812. We find no reason to now change our stance. The policies suggested by Appellants still remain highly debatable[1] and our decision to adopt them as the public policy of this State would indeed have considerable consequences.

Appellants argue that two decisions of the Tennessee Supreme Court handed down since Still have granted this Court the prerogative to change the indigenous common law of Tennessee. However, we find this argument to be without merit. In both cases cited by Appellants, Hanover v. Ruch, 809 S.W.2d 893 (Tenn. 1991) and Dupuis v. Hand, 814 S.W.2d 340 (Tenn. 1991), our Supreme Court merely followed the pronouncements of public policy as stated by our General

---

[1]Appellants asserts that only 16 states allow claims for loss of parental consortium in personal injury actions.

Assembly. Neither case suggests that the intermediate appellate courts in this state have the authority to create brand new causes of action on grounds of public policy.

Both Hanover and Dupuis involved common law torts that the general assembly had chosen to legislatively abolish. However, because of the constitutional limitations placed upon the general assembly, claims filed before the effective date of the legislation were not affected. When cases filed before the effective date reached our Supreme Court, the court decided that the laws passed by the general assembly could properly be considered the public policy of this State and chose to judicially extinguish previous precedent allowing the claims. Thus, these cases in no way grant this Court a license to create new law.

Appellants further argue that the Tennessee Supreme Court in Jordan v. Baptist Three Rivers Hospital, 984 S.W.2d 593 (Tenn. 1999) opened the door for this Court to examine the need for a cause of action for loss of parental consortium where a personal injury has occurred. We also find this argument to be without merit. Jordan dealt with an expansion of consortium damages under Tennessee's wrongful death statute, not under the common law. However, in dicta, the court stated, "We express no opinion as to whether the loss of parental consortium may be recovered in personal injury actions in which the parent or parents survive. That issue will be addressed in an appropriate case." Id. 595-96. We fail to see how such dicta creates the authority for this intermediate appellate court to create new law.

Believing our role to be limited in this cause, we also fail to see the utility in reassessing the policy considerations we previously contemplated in Still. We stand by our previous assessment in again refusing to create a new cause of action for loss of parental consortium in personal injury actions.

## Conclusion

For all of the aforementioned reasons, we affirm the judgment of the trial court. Costs on appeal are taxed to Appellants, Lindsay Taylor, Rachel Taylor and Bradford Taylor, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE