IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 14, 2010 Session

## OSCAR PAUL GUESS, III v. CITY OF MANCHESTER, A TENNESSEE MUNICIPALITY, ET AL.

Appeal from the Chancery Court for Coffee County
No. 09-46      William C. Lee, Judge

No. M2010-00250-COA-R3-CV - Filed November 15, 2010

Discharged city employee filed a petition for writ of certiorari challenging his termination by the city. The trial court remanded the case to the board of mayor and aldermen based upon the court's determination that there was evidence of bias on the part of one alderman and that the record did not allow the court to determine the grounds relied upon by the board in terminating the employee. We have determined that the trial court erred in remanding this case. The city employee waived the issue of possible bias on the part of one alderman by failing to raise it at any time during the hearing before the board. Moreover, the board was not required to make specific findings on the reasons for its decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Gerald Leighton Ewell, Jr., Tullahoma, Tennessee, for the appellants, City of Manchester, Tennessee, and the Board of Mayor and Alderman.

Christina Henley Duncan and John Stanley Rogers, Manchester, Tennessee, for the appellee, Oscar Paul Guess III.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Oscar Paul Guess, III, was employed by the City of Manchester ("City") as its Health and Codes Administrator beginning in 1989. At a meeting of the city's Board of Mayor and Aldermen ("Board") on December 2, 2008, the Board voted to terminate Mr. Guess's

employment. There was no discussion prior to the vote, and Mr. Guess had not received prior notice concerning his proposed termination.

A few days after the board meeting, the city attorney sent a letter to the Board advising the mayor and aldermen that Mr. Guess's position was governed by the city's personnel rules and regulations. Under the personnel rules, Mr. Guess was entitled to "an advance written notice containing the nature of the proposed action, the reasons therefore, and the right to appeal the charges in writing to the governing body." The mayor sent a letter to Mr. Guess informing him of these rights, and Mr. Guess requested a hearing. On December 23, 2008, the city attorney sent Mr. Guess a letter outlining the following reasons for the proposed termination:

> 1) Selling beer to a minor female on the side of Bushy Branch Road during Bonnaroo 2008.
>
> 2) Failing to follow State law and/or State regulations concerning the construction of the District Attorney's Office located on Madison Street. Failing to follow the directive of the State Fire Marshall's Office to pull the building permit until conditions were corrected. Stating to the State Fire Marshall that you would not stop construction because you did not agree with State law. This resulted in the State Fire Marshall taking control of the project until the violations were corrected that you refused to correct.
>
> 3) Unprofessional treatment of Mr. Jimmie Teal, a City employee, such that supervision of his position had to be transferred.
>
> 4) Subsequently addressing Mr. Teal in a threatening and intimidating manner on or about September 22, 2008, stating "you just [expletive] up, there will be a new Mayor in four years." This violated Manchester Municipal Code 4-242.
>
> 5) Failing to follow subdivision plats approved by the Planning Commission and insisting upon changes not contained therein. Stating to developers that you had sole power to approve or disapprove subdivisions and that a subdivision must be built your "way."
>
> 6) Issuing permits to and allowing unlicensed contractors to build and continue to build in the City after being advised of unlicensed status.

7) Allowing unlicensed contractors and licensed contractors to have an arrangement where the licensed contractor obtained the permit and the unlicensed contractor performed all the work.

8) Lack of professionalism.

<u>Hearing before Board of Mayor and Aldermen</u>

A hearing before the Board was held on January 5, 2009. The City began by introducing exhibits. Documents from the State Department of Commerce and Insurance and the Tennessee Board of Licensing Contractors reflected the issuance of building permits by the City of Manchester to contractors without licenses. A letter from John Constantine, a real estate developer, detailed complaints about Mr. Guess, including his alleged issuance of permits to unlicensed and uninsured contractors. Mr. Constantine stated that Mr. Guess did not follow subdivision plats approved by the planning commission and would require changes not approved by the commission.

Richard Depenhart, a retired field supervisor with the State Fire Marshal's Office, stated in a letter that he had advised Mr. Guess that the building being constructed in Manchester for the State District Attorney General's Office was in violation of state law, but Mr. Guess refused to pull the building permit and told Mr. Depenhart that he did not agree with the state law. The State Fire Marshal's Office then took control of the project to correct the problems. In a letter written in December 2008, Jimmie Teal, a city employee, described Mr. Guess's actions upon being informed by the mayor that Mr. Teal would be moving out of Mr. Guess's department. According to Mr. Teal, Mr. Guess "came into my office pointing his finger and speaking in a loud voice stated 'you just [expletive] up, there will be a new mayor in four years' then turned out walked out."

The City's first witness was Rodney Banks, an officer with the Coffee County Sheriff's Department, who testified about his investigation of complaints that Mr. Guess's wife and stepdaughter were selling beer without a license in the front yard of the Guess residence at the time of Bonnarroo, a music festival. Mr. Guess was not present when Officer Banks went to investigate.

Mr. Guess then took the stand and testified about some friction between himself and one of the aldermen, Donnie Thomas. According to Mr. Guess, the friction did not relate to his official duties but stemmed from personal animosity between Mr. Thomas's wife and Mr. Guess's wife, who had worked together. Mr. Guess had approached Mr. Thomas a few years earlier in the hallway and attempted to shake his hand, but Mr. Thomas had refused. Mr. Guess's attorney questioned him about all of the city's listed reasons for terminating him.

Mr. Guess denied any wrongdoing or impropriety and offered his interpretation of the relevant events.

Tammy Sue Craig, Mr. Guess's stepdaughter, testified about the beer-selling incident and stated that Mr. Guess did not participate in any way.

Jeff Lowe, a local builder, testified about working on the district attorney's office building project. Mr. Lowe also testified that he had been fined by the State for working after his contractor's license expired, but he did not think that Mr. Guess had any knowledge of these problems. He did not think Mr. Guess had ever issued a building permit to him knowing of his licensing problems.

Several former city employees and aldermen testified on behalf of Mr. Guess, praising his professionalism, efficiency, knowledge, courteousness, and service to the city. Alton Morris, an engineer and developer for many years in Manchester and in other areas, testified about his positive impressions of Mr. Guess, whom he found to be professional and helpful, and presented a petition signed by local citizens in support of Mr. Guess.

After Mr. Guess's witnesses had testified, the City called Jimmie Teal, city fire inspector, as a witness. After talking to the State Fire Marshal's Office, Mr. Teal told Mr. Guess that the district attorney's office building was under the supervision of the State Fire Marshal's Office because it was leased to the State. Mr. Guess became irritated and stated that he disagreed with that state law. Mr. Teal then reported back to the State, and Mr. Depenhart came to talk to Mr. Guess, who refused to pull the building permit on the project. Mr. Teal also testified about Mr. Guess's reaction, as described in his letter, when the mayor transferred him out of Mr. Guess's office.

The City also called Brent Bates, a licensed contractor, who testified that information concerning whether a contractor is licensed can be accessed via the State's website.

At the conclusion of the proof, Alderman Thomas moved to terminate Mr. Guess's employment with the City. Alderman Norman made a statement in support of Mr. Guess and stated his opinion that the proposed termination was not related to Mr. Guess's job performance. The Board voted 4 to 2 in favor of the termination of Mr. Guess's employment with the City.

Writ of Certiorari

In February 2009, Mr. Guess filed a petition for writ of certiorari in the Coffee County Chancery Court,[1] and the court issued the writ. The court requested briefs from the parties as to whether an issue had been raised regarding the recusal of Alderman Thomas or whether the issue had been waived.

On October 2, 2009, the court issued a memorandum and order with findings of fact and conclusions of law. Although no motion for recusal had been made before the Board, the court noted that, in cases of egregious bias, a tribunal could require recusal sua sponte. Because the plaintiff had related "specific instances of personal animosity expressed to him by Alderman Thomas" and Alderman Thomas did not refute those allegations, the court concluded that Mr. Guess had met his burden of proof to show bias. The court went on to find that the record was not sufficient to determine whether there was material evidence to support the Board's decision. The court remanded the case to the Board "for an individual vote on each of the grounds listed in it[s] notification to the Plaintiff" and ordered that "Alderman Thomas will be prohibited in participating in these votes." In the event that the composition of the Board had changed, the Court stated that a new hearing would be required. The court denied the defendants' motion to alter or amend, and the City and Board appealed.

On appeal, the City and Board argue that the trial court applied an incorrect legal standard in its analysis of the Board's decision, that the court erred in considering sua sponte the issue of Alderman Thomas's participation, and that the Board's decision should be affirmed under the rule of necessity. Mr. Guess argues that the trial court erred in failing to find that the Board exceeded its jurisdiction.

STANDARD OF REVIEW

The scope of review with respect to a common law writ of certiorari is limited. *Watts v. Civil Serv. Bd.*, 606 S.W.2d 274, 276 (Tenn. 1980); *Leonard Plating Co. v. Metro. Gov't of Nashville & Davidson County*, 213 S.W.3d 898, 903 (Tenn. Ct. App. 2006). A reviewing court may grant relief only when the board or agency has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990). The scope of review by the appellate courts is no broader than that of the chancery court in these cases with respect to evidence presented before the Board. *Watts*, 60 S.W.2d at 277.

---

[1]The petition included additional claims, but the trial court dismissed all of the claims with the exception of the writ of certiorari.

Reviewing a common law writ of certiorari "does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed." *Leonard Plating*, 213 S.W.3d at 903. Courts are not permitted to "(1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency." *Id.* at 903-04 (citations omitted). Rather, the courts must review the board's decision to determine whether there is any material evidence to support the decision; "a decision without evidentiary support is an arbitrary one." *Id.* at 904. The determination of whether the board's decision is supported by material evidence is a question of law. *Id.* To support a board's decision, the material evidence "must exceed a scintilla of evidence but may be less than a preponderance of the evidence." *Id.*

ANALYSIS

I.

We begin with the issue of possible bias on the part of Alderman Thomas, one of the four aldermen who voted in favor of Mr. Guess's termination.

A party seeking the recusal of a judge or board member must raise the issue promptly after the relevant facts become known. *See Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009); *Davis v. Tenn. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). Failure to object in a timely manner generally results in the waiver of a party's right to question the judge's impartiality. *Davis*, 23 S.W.3d at 313; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). Our Supreme Court has held that "[a]n objection to a judge's competence cannot be made for the first time on appeal." *Dupuis v. Hand*, 814 S.W.2d 340, 342 (Tenn. 1991).

We conclude that the trial court erred in raising the issue of Alderman Thomas's bias in the context of this case. At no time during the hearing before the Board did Mr. Guess make a motion to recuse Alderman Thomas or raise the issue of his bias as a decisionmaker. Mr. Guess did testify about an incident a few years prior to the termination decision reflecting personal animosity toward him on the part of Alderman Thomas. Mr. Guess did not, however, request that Alderman Thomas recuse himself. It was after the case went up to the chancery court on a petition for writ of certiorari that the issue was brought up by the court and briefed by the parties. Even assuming that circumstances of egregious bias could warrant a trial court raising the issue in the context of a petition for writ of certiorari proceeding, which is essentially appellate in nature, we find no evidence of egregious bias here. By failing to make a motion for recusal or otherwise raise the issue of Alderman Thomas's disqualification at the hearing before the Board, Mr. Guess waived any objection based upon bias.

II.

We must now determine whether the trial court erred in remanding the case to the Board "for an individual vote on each of the grounds listed in it[s] notification to the Plaintiff."

At the hearing, the Board did not specify which of the eight grounds listed in the notification to Mr. Guess formed the basis for its decision. In its decision, the trial court made the following pertinent statements:

> The Board of Mayor and Alderman relied on eight grounds to terminate the Plaintiff. This Court is of the opinion that no material evidence was presented to justify the termination of the Plaintiff on the grounds that he sold beer to a minor female on the side of Brushy Branch Road during Bonnaroo 2008. If this was the sole ground upon which the Board of Mayor and Aldermen relied, then it acted arbitrarily or capriciously. The Court is also of the opinion that sufficient material evidence existed regarding one or more of the other seven grounds to uphold the decision of the Board of Mayor and Aldermen under the standard of review imposed by law upon the Court. However, from the record transmitted to the Court, the Court can not determine which ground or grounds were relied upon.

As the trial court acknowledged, administrative bodies are not required to make specific findings of fact absent a statute or ordinance requiring them to do so. *Moore v. Metro. Bd. of Zoning Appeals*, 205 S.W.3d 429, 436 (Tenn. Ct. App. 2006); *Weaver v. Knox County Bd. of Zoning Appeals*, 122 S.W.3d 781, 785 (Tenn. Ct. App. 2003). Under the common law writ of certiorari, an administrative decision must be upheld if any material evidence exists to justify it. *McCallen*, 786 S.W.2d at 641; *Watts*, 606 S.W.2d at 277; *Hill v. City of Germantown*, No. W2009-00308-COA-R3-CV, 2010 WL 1240436, at *16 (Tenn. Ct. App. Mar. 31, 2010) (no Tenn. R. App. P. 11 application filed). Contrary to the analysis applied by the trial court, a reviewing court is not to determine the validity of the precise grounds upon which an administrative body based its decision but only whether there is material evidence to support the decision. As the trial court found, the administrative record in this case contains material evidence to support one or more of seven of the grounds given by the City for Mr. Guess's termination. Thus, material evidence exists to support the Board's decision.

*Lewis v. Bedford County Bd. of Zoning Appeals*, 174 S.W.3d 241 (Tenn. Ct. App. 2004), a case cited by the trial court, involved the issue of whether a local zoning board or the zoning applicant had the responsibility to make a record of evidence sufficient to allow

effective judicial review. *Id.* at 243. The court concluded that it was the duty of the board to preserve and file with the reviewing court an adequate record of the evidence presented to the board. *Id.* at 247. Because the record filed by the board was not sufficient to determine whether material evidence was presented to support the board decision, the court vacated the board's decision and remanded for a new hearing. *Id.* at 246-248. The *Lewis* decision does not suggest that a board must specifically state the reasons for its decision. Where, as in the present case, the evidence presented to the board has been preserved and provided to the reviewing court, the court can make a determination as to whether there is material evidence to support the board's decision. *Id.* at 247.

III.

Mr. Guess argues that the trial court erred in failing to find that the Board exceeded its jurisdiction. According to Mr. Guess's interpretation, the mayor, not the Board, had the authority to terminate Mr. Guess's employment.

The City's charter provides: "The exercise of all powers granted in this Act or by general law is invested in the Board of Mayor and Aldermen of the City except as otherwise specifically provided." Thus, all powers of the City of Manchester are generally vested in the Board. Mr. Guess relies upon the following provisions of the Personnel Rules and Regulations found in the Manchester Municipal Code[2]:

> 4-233. <u>Dismissal and demotion</u>. *The mayor may dismiss or demote an employee. . . .*
> The employee shall be furnished an advance written notice containing the nature of the proposed action, the reasons therefore, and the right to appeal the charges in writing to the governing body. This notice shall be furnished at least one calendar week prior to the proposed effective date of the action. During this period, the employee may be retained on duty status, placed on leave, or suspended with or without pay at the discretion of the mayor[.] [I]f the employee fails to respond to the advance notice, the proposed action shall be effective on the date specified with no need for further action.
> If the employee requests a hearing on the proposed action, the governing body shall promptly set a date and time for the hearing and shall carefully consider all evidence presented before making a decision. The decision of the governing body shall be final.

---

[2]Tenn. Code Ann. § 6-3-106, also cited by Mr. Guess, applies to cities chartered under Title 6, Chapter 1 of the Tennessee Code. The City of Manchester is not organized under those statutes. *See* 2005 TENN. PRIV. ACTS ch. 74.

(Emphasis added). Mr. Guess interprets section 4-233 as providing that only the mayor can dismiss an employee. We find Mr. Guess's interpretation of the relevant provisions unconvincing and illogical.

The first line of section 4-233 of the municipal code, the source of Mr. Guess's argument, uses permissive language ("may") rather than mandatory language ("shall"). We find nothing in this language to indicate that only the mayor can terminate an employee. Moreover, section 4-233 provides that the mayor's decision is subject to appeal to the governing body, the Board; in the event of such an appeal, the dismissal does not take effect until the Board has made its decision. We reject Mr. Guess's assertion that the Board exceeded its authority in terminating him.

CONCLUSION

The judgment of the chancery court is reversed, and the decision of the Board of Mayor and Aldermen is affirmed. Costs of appeal are assessed against the appellee, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE